IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 9, 2010 Session

**REGINA D. WISER**
**v.**
**CYRUS W. WISER, JR.**

**Appeal from the Circuit Court for Rutherford County**
**No. 50085      Royce Taylor, Judge**

**No. M2009-00620-COA-R3-CV - Filed June 25, 2010**

This appeal concerns post-divorce modification of alimony and child support. The parties had two children; during the marriage, the wife remained at home and cared for the parties' children. The husband was self-employed through his solely owned company. Ultimately, the parties divorced on stipulated grounds, and the husband was ordered to pay child support. The husband was awarded his business. The trial court awarded two commercial buildings to the wife and ordered the husband to pay the associated mortgage. The husband was ordered to pay alimony until the buildings were paid off, after which the wife's income was to be derived from the buildings. After the divorce, the income of the husband's company increased substantially and the husband refinanced the buildings. Two years after the divorce, the wife filed a petition for modification of alimony and child support. After a trial, the trial court declined to increase the alimony. It granted an increase in the husband's child support obligation to the maximum under the guidelines, but declined to award more than the guideline amount. The trial court also declined to award the wife attorney fees. The wife now appeals. We find that the increase in the income of the husband's company was a substantial and material change in circumstances, and that the decision not to increase alimony was an abuse of discretion, and therefore modify the alimony award. We affirm the trial court's refusal to grant an upward deviation from the guideline amount of child support. We reverse the trial court's denial of the wife's request for attorney fees with respect to child support and alimony, but affirm the denial of attorney fees for the refinancing of the two buildings awarded to the wife.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in**
**Part, Reversed in Part, Modified, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

D. Scott Parsley and Michael K. Parsley, Nashville, Tennessee, for the Plaintiff/Appellant, Regina D. Wiser

Brad W. Hornsby and Chris L. Richardson, Murfreesboro, Tennessee, for the Defendant/Appellee, Cyrus W. Wiser, Jr.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

Plaintiff/Appellant Regina D. Wiser ("Wife") and Defendant/Appellee Cyrus W. Wiser, Jr. ("Husband") married in 1982. They had two children, born in 1992 and 1996. The family lived in Murfreesboro, Tennessee.

Husband is a self-employed engineer and businessman. His business activities are conducted through various solely owned limited liability companies registered in Tennessee and Alabama. At the time of trial, Husband's chief enterprise was Wiser Company, LLC ("Wiser Company" or "the Company"). Wiser Company is registered in Tennessee and is the parent company of approximately four out-of-state subsidiaries.[1] Between offices in Tennessee and Alabama, Wiser Company employs about one hundred and fifty-five persons. The nature of the Company's business is not clear from the record, but appears to be diverse; it involves various real estate holdings, including unimproved land and commercial buildings. Prior to the parties' divorce, Wiser Company's assets apparently included four commercial buildings ("the buildings") located in Murfreesboro.[2]

As the sole owner of Wiser Company, Husband receives all of the profits and bears all of the losses generated by the Company. The success or failure of the Company depends to a large extent on Husband's personal efforts and his relationships with various government officials and business associates.

Wife is a college graduate and interior designer. At some point during the marriage, Wife worked for Wiser Company. However, throughout most of the marriage, she was a homemaker and cared for the parties' children.

---

[1] In this Opinion, the term "Wiser Company" or "the Company," is inclusive of all of Husband's business enterprises.

[2] The record conflicts on this point. Wiser Company's CFO testified that the Company owned the buildings prior to the divorce. A certified public accountant who prepared Wiser Company's tax returns testified that Husband and Wife owned the buildings and paid for the construction of the buildings with funds advanced by Wiser Company.

During the marriage, Wiser Company's profits, and thus Husband's income, fluctuated greatly, and the Company's holdings apparently included properties that were significantly leveraged. However, the parties' lifestyle was one of some considerable wealth. They lived in a 6,000 square foot house, took numerous vacations, belonged to a country club, and the children attended private schools. Husband's Company furnished him vehicles. The Company had a suite in the Tennessee Titans football stadium, which Husband used for business development.

On May 5, 2004, Wife filed a complaint for divorce in the Rutherford County Circuit Court ("trial court"). Husband counterclaimed for divorce. Ultimately, the parties stipulated to the grounds for divorce pursuant to Tennessee Code Annotated § 36-4-129.[3] They agreed on a parenting plan with parenting time evenly divided, and agreed that Husband would pay Wife $1498 per month in child support. They could not resolve the division of the marital estate and the issue of alimony.

In June 2005, the trial court conducted a two day bench trial on the remaining issues. The appellate record does not contain a transcript of the divorce proceedings. In the divorce trial, the parties submitted into evidence their joint tax returns for 1999 through 2003. The tax returns showed that Wiser Company netted profits of $366,881 in 1999; losses of $197,509 in 2000; profits of $69,895 in 2001; losses of $160,737 in 2002; and profits of $536,781 in 2003. For reasons not clear in the record, the parties' 2004 tax return was not entered into evidence at the trial. Husband apparently testified at trial that he drew an advance of $16,000 per month on Wiser Company's annual earnings and that Wiser Company was experiencing financial difficulty at the time. At the conclusion of the trial, the trial court took the case under advisement.

On July 7, 2005, the trial court issued an oral ruling. In its ruling, the trial court commented that the parties had lived "a very lavish lifestyle" but did so on borrowed money. In light of

---

[3]Tennessee Code Annotated § 36-4-129 provides:

(a) In all actions for divorce from the bonds of matrimony or legal separation the parties may stipulate as to grounds and/or defenses.

(b) The court may, upon stipulation to or proof of any ground of divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce or if a divorce is to be granted on the grounds of irreconcilable differences, declare the parties to be divorced, rather than awarding a divorce to either party alone.

T.C.A. § 36-4-129 (2009 Supp.).

Wife's prolonged absence from the workforce, the trial court found that she was in need of long-term support. The trial court found that Husband was capable of paying Wife support but it grappled with how to structure long-term support considering the uneven performance of Wiser Company.

The trial court observed that Wiser Company is "a personal business . . . based solely upon [Husband's] efforts," and concluded that it was not feasible to sell the Company to facilitate division of the marital estate. It described the Company's financial situation as "somewhat of a mess," and noted that the financial information provided to the trial court was some eighteen months out of date because no 2004 or 2005 financial statements were entered into evidence. The trial court found that Wiser Company was overall profitable and, from 1999 to 2003, produced an average annual profit of $123,062. However, the Company's "up-and-down" performance presented the trial court with "a problem with trying to come up with long-term alimony."

In its division of marital property, the trial court divided the parties' house, stock, and bank accounts between them. It awarded the Company to Husband virtually *in toto* and awarded him most of its assets as well. The Company's four commercial buildings in Murfreesboro would be held jointly by Husband and Wife until the mortgage was paid, which was projected to be in August 2017, approximately twelve years' time. Husband was ordered to pay the $923,000 debt on the buildings. After payoff of the debt in 2017, Wife would take title to two of the buildings, which would generate income for her support. In the meantime, until Wife could begin receiving income from the buildings, Husband was ordered to pay Wife monthly alimony[4] in the following amounts: $6000 for four years, $5000 for the next four years, and $4000 for the final four years.[5] After that, the alimony was scheduled to end and the two commercial buildings would be Wife's primary source of income.

On August 5, 2005, the trial court entered a written final decree of divorce consistent with its oral ruling. The final divorce decree was later amended to require Wife to participate in refinancing the buildings if Husband obtained more favorable financing, provided that the refinancing did not "require [Wife] to become liable for more indebtedness than she otherwise would be at that time."

Thereafter, Husband obtained proposals from various financial institutions to refinance the buildings. He forwarded these proposals to Wife. To assist her in the refinancing process,

---

[4]The trial court's order did not specify the type of alimony awarded.

[5]The trial court noted that it was "a little perturbed about the alimony" because the trial court was "not sure what [Husband's] current income is, and it [the alimony] may be too low and it may be too high."

Wife sought legal counsel. Because she believed that Husband's various refinancing proposals would increase the total debt secured by the buildings, Wife refused to consent. When the parties were unable to agree, Husband filed a petition with the trial court to compel Wife's cooperation with refinancing the buildings.[6] In response, Wife sought dismissal of the petition as well as an award of attorney fees incurred in defending against it.

On June 7, 2007, while Husband's petition on refinancing the buildings was pending, Wife filed a petition to increase alimony and child support. In her petition, Wife alleged a material and substantial change in circumstances justifying an increase in alimony. She also asserted that there had been a more than fifteen percent increase in the amount of child support required to be paid under the Tennessee Child Support Guidelines ("Guidelines"). Wife also sought an award of attorney fees.[7]

Meanwhile, the parties reached an agreement on refinancing the buildings. On January 29, 2008, the trial court entered an order incorporating the terms of the parties' agreement.[8] The agreed order explicitly reserved, for a later hearing, adjudication of Wife's claim for attorney fees incurred in connection with Husband's petition to compel cooperation in the refinancing.

In December 2008 and February 2009, the trial court conducted a two day bench trial on the remaining issues, namely, alimony and child support modification, as well as Wife's request for attorney fees. The trial court heard testimony from Husband and Wife, as well as other witnesses, and twenty-eight exhibits were entered into evidence, including Husband's tax returns for 2004 through 2007 and a statement of Wife's monthly income and expenses.

Husband's testimony focused on the financial condition of Wiser Company, Husband's income since the parties' divorce, and various expenditures he had made. As noted above, although the parties' divorce was tried in mid-2005, the most recent income figures made available to the trial court at that time were from 2003. In the 2008-2009 hearings below, tax returns and other documents showed Wiser Company's income from 2004-2007. In 2004, Wiser Company had losses totaling $55,877. In 2005, the Company had a profit of

---

[6]Husband filed a motion rather than a petition. On June 1, 2007, the trial court entered an order stating that it considered Husband's motion to be a petition.

[7]On December 10, 2007, Wife filed a petition to modify the parties' parenting plan. She later abandoned her attempt to modify the parties' parenting plan.

[8]Under the agreement, the buildings were refinanced without an increase in the total debt. Additionally, Wife was not personally liable for the refinanced debt, although her two buildings continued to serve as collateral.

$517,347. In 2006, Wiser Company produced profits of $929,973. In 2007, the Company had $770,033 in profits.[9]

Throughout his testimony, Husband maintained that Wiser Company's profits were retained by the Company and did not "go[] in [his] pocket." He contended that his only actual income was the $16,000 monthly draw on Wiser Company's anticipated annual earnings, the same draw he was receiving at the time of the divorce. Husband pointed out that, at the time of the divorce, his monthly advance was putting Wiser Company in debt, and said that the Company's recent profits were paying off that debt. He also noted that the mortgage payment on the two commercial buildings that Wife was due to receive in 2017 was $18,000 per month, paid by after-tax income. Husband also explained that Wiser Company made the monthly payments on the debt secured by Wife's two buildings via a pass-through lease to Wiser Company as tenant. The refinancing of the buildings was necessary, Husband maintained. He explained that the financing structure in the wake of the divorce decree created a "huge problem" for Wiser Company because the Company retained the debt with no corresponding asset to offset the liability.[10] Husband described the refinancing as a business expense and said that the Company paid his attorney fees for it.

Husband testified that, after the divorce, Wiser Company began paying him an additional $6,000 per month draw, to cover his alimony obligation to Wife. After the divorce, he repurchased the parties' 6000 square foot marital home at auction and put $200,000 into renovations and new furnishings.[11] Since the divorce, Husband received sporadic cash payments from the Company, in amounts of several thousand dollars at a time, which he explained might have been for political contributions or related to Titans football games. The Company continued to furnish a suite in the Titans football stadium, used for business development, continued to furnish Husband a vehicle, and paid for child care services for

---

[9]In setting Husband's alimony obligation in the divorce proceedings, the trial court looked to Husband's business income found on line twelve of his tax return Form 1040. For consistency, we primarily look to Husband's business income on line twelve as well. We note that Husband's tax returns showed total gross income in 2004 of $63,591, $578,629 in 2005, $633,793 in 2006, and $748,742 in 2007. Items such as capital gain or loss and rental real estate, royalties, partnerships, corporations, and trusts income and losses account for the discrepancy between Wiser Company's income and Husband's income.

[10]Husband also noted that the buildings had served as collateral for a larger "wrap around" loan that funded Wiser Company's operations.

[11]Half of the $200,000 came from Husband's share of the net proceeds from the auction of the marital home.

him. Husband's work involves frequent travel, and he travels for pleasure as well, and regularly takes the parties' children, his new wife, and her children on trips with him.[12]

Husband also testified that he purchased a new car for the parties' daughter, and paid for her car insurance as well.

Wife testified as well. Wife said that she is a college graduate and a licensed interior designer. Because she had been out of the workforce for many years, after the parties' divorce, she enrolled in night classes to learn basic computer programs such as Microsoft Outlook. Since the divorce, Wife worked part-time at a temp agency, earning twelve dollars per hour, and also did some part-time design work for friends. Unemployed at the time of the hearing, Wife claimed that she continued to look for work. However, unlike Husband, she did not have paid child care, and said that her child care obligations impacted her ability to work outside the home. She said that her only source of income was alimony and child support, totaling about $7500 per month. After the divorce, Wife said, she curtailed her expenses and her lifestyle to fit her income level. She purchased a home considerably smaller than the parties' marital home, and used her half of the proceeds from the auction of the marital home as her down payment. Wife testified that she was living within her means and kept her monthly budget "98 percent . . .in the black" but occasionally used credit cards to make ends meet.

Wife addressed the refinancing of the commercial buildings in her testimony. Wife explained that Husband's proposals involved "so many banks" and she was not equipped to evaluate them without legal assistance. She understood that some proposals would take her off of the loan, but would also increase the overall debt, contrary to the trial court's order. Wife contended she was cooperative with Husband's efforts to refinance the buildings but it was necessary to hire legal counsel to evaluate the various proposals. In the trial court's original distribution of the marital estate, Wife did not receive sufficient assets to pay her attorney fees, so she was seeking her attorney fees for the refinancing.

In light of the disparity between her income and Husband's income, Wife said, she could not "even come close to competing with" the amount of money Husband expended on their children. She noted that Husband had purchased "a brand new, loaded, top of the line car" for their sixteen-year-old daughter, and paid for her to have a "fabulous" birthday party. In contrast, for their daughter's birthday, Wife could afford only to upgrade the memory on her daughter's computer and purchase a new chair for her dressing table. The children often ask Wife for expensive items, such as lunch at the country club after church, or to go to the

---

[12]Husband's business and vacation travel destinations included Key Biscayne, Florida, Amelia Island, Florida, Las Vegas, Ft. Lauderdale and West Palm Beach, Florida, and a cruise to the Bahamas.

country club pool, and she has to explain that "mom can't afford" to belong to the country club. While Husband continues to take the children on many trips, just as they had enjoyed together prior to the divorce, Wife cannot afford to do so. Wife sought an increase in alimony, an increase in child support retroactive to the date of filing, an upward deviation from the Guideline amount of child support, and her attorney fees. Wife presented to the trial court a list of expenses showing how she would spend the increased alimony and child support, totaling approximately $13,500 per month. If awarded increased amounts, Wife said, she could do additional activities with the children, such as vacations or going out to eat or trips to Nashville or horseback riding or tennis, and could provide additional financial security for herself, as in purchasing long-term care insurance.

The trial court took the matter under advisement and entered a written order on March 12, 2009. In the order, the trial court clarified that the original alimony award was not *in solido* and remained modifiable.[13] Nevertheless, the trial court denied Wife's request for an increase in alimony. It explained:

> At the time of the divorce, the court noted that it was difficult to determine alimony due to the erratic earnings of [Husband's] company, as well as a tremendous amount of debt that was associated with the business. Since the divorce, it appears that the business has stabilized. [Husband] is able to meet all of his obligations which includes making a sizable payment on a mortgage related to a building which was awarded to [Wife] as well as $6000 per month alimony *in futuro*. It was the Court's intention that [Wife] would receive a future income producing asset since at the time of the divorce, the business had little or no market value without the goodwill of [Husband]. If the business failed, she would not have received that asset. If the business continues to do well, the mortgage will be paid in full and she will receive a valuable asset. [Wife] has sufficient alimony to meet her current needs and it is anticipated the income-producing property will allow her to meet her future needs.

Thus, the trial court reasoned that Husband's business had merely "stabilized," and that the Company's improved financial performance inured to Wife's benefit because it helped ensure that the Company would pay off the mortgage on the buildings Wife was scheduled to receive in 2017. It found that the existing alimony award met Wife's needs at the time of trial, and that the income from the buildings would meet her needs once the alimony ended. On this basis, the trial court denied her request for an increase in alimony.

---

[13]At the trial, Husband's attorney contended that the trial court's original alimony award was unmodifiable alimony *in solido*. This contention was rejected by the trial court. Husband does not raise this as an issue on appeal.

The trial court granted Wife's request to increase Husband's child support obligation, finding that the amount of income Husband earned would require him to pay the maximum amount of child support under the Guidelines. The trial court declined, however, to grant an upward deviation from the maximum Guideline amount because Husband "has the children 50% of the time and pays for the medical and dental expenses, as well as provides the oldest child with a vehicle." Accordingly, the trial court increased Husband's child support obligation from $1498 per month to $3200 per month, retroactive to December 10, 2007.[14]

Finally, the trial court denied Wife's request for attorney fees. It found that the attorney fees that she incurred "were not a result of litigation, but rather a result of dealing with the mortgage refinancing process" and that incurring the fees "inured to her [Wife's] benefit," because it facilitated the continued financial health of Wiser Company. The trial court did not expressly address Wife's request for attorney fees in connection with her petition to increase alimony and child support, but did not award her any attorney fees.

Wife now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Wife raises the following issues:

> 1) Whether the trial court erred in failing to increase Husband's alimony obligation, and if so, whether Wife is entitled to her reasonable attorney fees;
> 2) Whether the trial court erred in refusing to deviate upward from the child support obligation recommended by the Guidelines;
> 3) Whether the trial court erred in refusing to award Wife attorney fees for successfully increasing Husband's child support obligation;
> 4) Whether the trial court erred in refusing to increase Husband's child support obligation retroactive to the date of filing the petition to increase child support;
> 5) Whether the trial court erred in refusing to award Wife attorney fees for enforcing the trial court's alimony decree.

On appeal, "[w]hen the trial court has set forth its factual findings in the record, we will presume the correctness of these findings so long as the evidence does not preponderate against them." *Evans v. Evans*, No. M2002-02947-COA-R3-CV, 2004 WL 1882586, at *4 (Tenn. Ct. App. Aug. 23, 2004), *no perm. app.* (citing TENN. R. APP. P. 13(d); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)); *accord Nashville Ford Tractor, Inc. v. Great*

---

[14]Wife's petition to increase child support was filed on June 7, 2007, but her petition to modify the parenting plan, later abandoned, was filed on December 10, 2007.

***Am. Ins. Co.***, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005). We review the trial court's conclusions of law *de novo* with no presumption of correctness. ***Nashville Ford Tractor, Inc.***, 194 S.W.3d at 425.

As to Wife's request for an increase in alimony, "modification of a spousal support award is 'factually driven and calls for a careful balancing of numerous factors.' " ***Bogan v. Bogan***, 60 S.W.3d 721, 727 (Tenn. 2001) (quoting ***Cranford v. Cranford***, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)). Generally, the trial court's decision on whether to modify spousal support is not altered on appeal unless the trial court abused its discretion. ***Goodman v. Goodman***, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999) (citing ***Ingram v. Ingram***, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986)).

As to Wife's request for an upward deviation from the Guideline amount of child support, the trial court may deviate, in its discretion, from the amount of support recommended by the Child Support Guidelines. ***Richardson v. Spanos***, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005) (citing ***State v. Wilson***, 132 S.W.3d 340, 343 (Tenn. 2004); ***Jones v. Jones***, 930 S.W.2d 541, 545 (Tenn. 1996)). Accordingly, the trial court's decision on this issue is reviewed on appeal under an abuse of discretion standard. ***Id.*** We review the trial court's decision on whether to award attorney fees under an abuse of discretion standard as well. ***Richardson***, 189 S.W.3d at 729; ***Evans***, 2004 WL 1882586, at *17.

## ANALYSIS

### *Alimony Modification*

Wife first argues that the trial court erred in declining to increase Husband's alimony obligation. She emphasizes that, in the original divorce proceedings, the trial court acknowledged uncertainty about Husband's income. Wife notes that Husband's post-divorce tax returns show a clear trend of high income, sufficient to pay alimony that would better enable Wife to have the lifestyle to which she became accustomed during the marriage. Wife acknowledges that she is "just able to afford her reasonable expenses" with the current amount of alimony, but she cites ***Tillis v. Tillis***, 1984 Tenn. App. LEXIS 2746 (Tenn. Ct. App. Mar. 9, 1984), for the proposition that alimony may be increased even if there is not a major change in the obligee's need, if the obligor's ability to pay increases dramatically.

In response, Husband asserts that his increase in income alone is an insufficient basis for increasing alimony, citing ***Wright v. Quillen***, 83 S.W.3d 768 (Tenn. Ct. App. 2002). He notes that Wife's need has not increased since the parties' divorce. Husband contends that the purpose of awarding alimony has changed from enabling an economically disadvantaged

spouse to maintain the standard of living enjoyed during the marriage to rehabilitating the recipient spouse, citing **Robertson v. Robertson**, 76 S.W.3d 337 (Tenn. 2002).

To modify an alimony award, there must be a substantial and material change in circumstances. T.C.A. § 36-5-121(a) (2005); **accord Bogan**, 60 S.W.3d at 727-28 (citing T.C.A.§ 36-5-101(a)(1) (Supp. 2000)). "This change in circumstances must have occurred since the original award." **Brewer v. Brewer**, 869 S.W.2d 928, 935 (Tenn. Ct. App. 1993) (citing **Jones v. Jones**, 659 S.W.2d 23, 24 (Tenn. Ct. App. 1983)). A "substantial" change is one that "significantly affects either the obligor's ability to pay or the obligee's need for support." **Bogan**, 60 S.W.3d at 728 (citing **Bowman v. Bowman**, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991)). A change is material if it was not "anticipated or [within] the contemplation of the parties at the time" of the original divorce. **Id.** (citing **Watters v. Watters**, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999); **McCarty v. McCarty**, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992); **Elliot v. Elliot**, 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991)).

The party seeking modification bears the burden of proving that a substantial and material change in circumstances has occurred. **Freeman v. Freeman**, 147 S.W.3d 234, 239 (Tenn. Ct. App. 2003) (citing **Seal v. Seal**, 802 S.W.2d 617, 620 (Tenn. Ct. App. 1990)). Once a substantial and material change in circumstances has been established, the trial court is under no duty to modify the award; the party seeking modification must demonstrate that a modification is warranted. **Bogan**, 60 S.W.3d at 730. In "assessing the appropriate amount of modification, if any, in the obligor's support payments, the trial court should consider the factors contained in" Tennessee Code Annotated § 36-5-121(i)[15] "to the extent that they may be relevant to the inquiry." **Id.** (citing **Watters**, 22 S.W.3d at 821; **Seal**, 802 S.W.2d at 620; **Threadgill v. Threadgill**, 740 S.W.2d 419, 422-23 (Tenn. Ct. App. 1987)). The **Bogan** Court explained the difference in applying these statutory factors in determining the initial award of support and in a support modification proceeding:

> When addressing an *initial* award of support, the need of the spouse must necessarily be the most important factor to consider, because alimony is primarily intended to provide some minimal level of financial support for a needy spouse. Nevertheless, when deciding whether to *modify* a support award, the need of the receiving spouse cannot be the single-most dominant factor, as a substantial and material change in circumstances demands respect for other considerations. . . . [T]he ability of the obligor to provide support must be given at least equal consideration.

---

[15] At the time of the **Bogan** decision, this statutory provision was contained at Tennessee Code Annotated § 36-5-101(d)(1). **See Bogan**, 60 S.W.3d at 730.

*Id.* (citations omitted). Thus, while the obligee spouse's need is the central inquiry for an initial alimony award, other considerations become more prominent in a modification proceeding.

In describing the change in Wiser Company's performance, the trial court noted that, at the time of the divorce, the Company's earnings were "erratic," but since the divorce, "the business has stabilized," and Husband can now "meet all of his obligations." It observed that the performance of Wiser Company allowed for payment of the mortgage on the commercial buildings Wife was awarded. It then found that the current alimony is sufficient to meet Wife's "current needs" and that the buildings would produce enough income to meet her future needs.

It is unclear whether the trial court's order amounts to a finding that there was not a substantial and material change in circumstances, or a conclusion that, even if there were such a change in circumstances, a modification was nevertheless not warranted. Consequently, in reviewing the trial court's order, we consider first whether the facts establish a substantial and material change in circumstances.

From 1999 through 2003, Wiser Company experienced uneven performance, with alternating years of profit and years of loss. The trial court observed, "I don't know whether Wiser Company is trending at making a million dollars a year or losing money or just breaking even." Understandably at a loss as to how to set alimony under the circumstances, the trial court noted that Wiser Company's average annual performance from 1999 through 2003 was $123,062 in profit. The trial court noted as well that Wiser Company's bank was allowing Husband to draw $16,000 per month. The trial court commented that this was "not income" but was "just a draw," and found the draw to be an indication that Husband was "still making money." Under all of these circumstances, the trial court set Husband's alimony obligation at $6,000 per month for four years, $5,000 per month for four years, and $4,000 per month for four years, until the debt on the two commercial buildings awarded to Wife was paid off. Neither party appealed the trial court's 2005 ruling.

After the entry of the divorce decree, Husband's tax returns show that Wiser Company posted annual profits from 2005 through 2007 that averaged about $739,118 per year.[16] Thus, since the divorce, Wiser Company's average profits increased by $616,056 per year

---

[16]This number is derived from averaging the 2005 profit of $517,347, the 2006 profit of $929,973, and the 2007 profit of $770,033.

for three consecutive years. This amounts to an increase in income available to Husband of some $51,000 per month.[17]

Husband argued to the trial court below that his income was unchanged because his draw continued to be $16,000 per month. Even if Husband's draw in fact was unchanged,[18] as observed by the trial court in the original divorce proceedings, this amount is not Husband's income, it is "just a draw." Husband argued as well that fringe benefits such as a vehicle and child care should not be considered in determining his income because the vehicle was used for business as well as for personal transportation, and the child care was necessitated by his frequent business travel. No doubt this is true, and there is ample justification for Wiser Company to be able to claim Husband's vehicle and his child care as legitimate business expenses. This fact does not preclude these items from being considered part of Husband's income, along with any other fringe benefits. *See, e.g., Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005) (holding that it was error for trial court not to consider company vehicle as part of obligor's income for purposes of calculating child support).

Clearly some of Wiser Company's profits should be plowed back into the business rather than paid to Husband, to ensure its future profitability. Nevertheless, Husband controls the cash flow of his business, including the amount of income he withdraws and whether to pay personal expenses, such as Wife's alimony, out of the business accounts.[19] *See, e.g., Jones v. Jones*, No. M2009-01512-COA-R3-CV, 2010 WL 2025403, at *6 (Tenn. Ct. App. May 20, 2010). Husband's lifestyle indicates that he has no trouble paying for luxuries in addition to meeting his obligations, such as re-purchasing and renovating the parties' spacious marital home, buying a new vehicle for the parties' daughter, and paying for items such as regular vacation trips and a $23,000 fur coat for his new wife. By any measure, the consistent improved performance of Wiser Company has significantly affected Husband's ability to pay, and thus constitutes a "substantial" change in circumstances. *Bogan*, 60 S.W.3d at 728 (citing *Bowman*, 836 S.W.2d at 568).

Husband argues that the change in his income is not material because it was contemplated at the time of the parties' divorce. He notes that the trial court found that Wiser Company

---

[17]Husband's tax returns for 2005-2007 show average gross income of $653,721 per year, or $54,476 per month.

[18]In the proceedings below, Husband acknowledged that after the divorce decree was entered, he arranged for a separate "draw" from Wiser Company to pay Wife's alimony, so that his $16,000 per month basic draw would be unaffected by his alimony obligation.

[19]Indeed, the record shows that Husband continued the same draw from Wiser Company even during the years in which the Company's tax returns showed substantial losses.

had "stabilized" and interprets this finding as indicating that the trial court considered the fact that Husband's income would increase at the time of the original divorce decree.

From our review of the trial court's order, it recalled the "erratic" earnings of Wiser Company at the time of the parties' divorce and observed that the business had since "stabilized." The trial court's order, however, does not address whether Wiser Company's over fivefold increase in average annual profits was "anticipated" or contemplated at the time the original decree was entered. Indeed, the trial court's oral ruling at the time of the divorce proceedings shows that the trial court simply did not know which direction Wiser Company would take, whether it would "mak[e] a million dollars a year or los[e] money or just break[] even." By Husband's logic, then, *any* change in his income would not be material, because virtually any change was "anticipated." This argument is without merit. We conclude that the increase in Husband's income constitutes a substantial and material change in circumstances.

Even if there is a substantial and material change in circumstances, the party seeking modification must demonstrate that it is warranted, considering the factors set out in Tennessee Code Annotated § 36-5-121(i),[20] to the extent that they are relevant in the

---

[20]Tennessee Code Annotated § 36-5-121(i) provides:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
> (7) The separate assets of each party, both real and personal, tangible and intangible;
> (8) The provisions made with regard to the marital property, as defined in § 36-4-121;
> (9) The standard of living of the parties established during the marriage;
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
> (12) Such other factors, including the tax consequences to each party, as are necessary to
> (continued...)

modification proceeding. *See Bogan*, 60 S.W.3d at 730. The trial court found that the original alimony award was sufficient to meet Wife's "current needs" and that the income from the two buildings would meet her future needs. The trial court did not discuss other statutory factors.

The statutory factors include the parties' relative earning capacities. *See* T.C.A. § 36-5-121(i)(1) (2005). This is of particular importance when one spouse has spent much of the marriage as a homemaker and stay-at-home parent, as recognized by our Legislature. *See* T.C.A. § 36-5-121(c)(1) (2005). In this case, at the time of the parties' divorce, in light of Wife's many years as a homemaker out of the job market, the trial court predicted that "she's going to have a tough time supporting herself particularly in the manner in which they have been living." The testimony in the modification proceedings indicated that the trial court's prediction was accurate. Wife's testimony showed that her success in establishing a career as an interior designer was very limited. Thus, the contrast between Wife's earning capacity and Husband's earning capacity remains marked. *See* T.C.A. § 36-5-121(i)(1) (2005). Wife testified as well that her employment opportunities were circumscribed by her child care responsibilities during her residential parenting time, and that her meager earning capacity made the cost of child care prohibitive. *See* T.C.A. § 36-5-121(i)(6). This again is in contrast with Husband, who is furnished child care by Wiser Company. Consideration of these factors, then, militates in favor of modifying Husband's alimony obligation.

The statutory factors also include the assets and property owned by each party and the parties' relative financial resources. *See* T.C.A. §§ 36-5-121(i)(1), (7), (8) (2005). In the divorce, for practical reasons, the trial court awarded Husband virtually the entirety of his businesses and almost all of the assets owned by his business entities, many of which were highly leveraged. Wife was awarded two commercial buildings, but cannot take possession of them until they are paid off in 2017, and thus they will not generate income for her until then. Wife's share of the proceeds from the sale of the marital home were put into purchasing a substantially more modest home for her and the parties' children. There are no other significant assets at Wife's disposal to pay for her living expenses until the two commercial buildings are paid off. Thus, these factors favor modification of alimony as well.[21]

---

[20](...continued)
          consider the equities between the parties.

T.C.A. § 36-5-121(i) (2005).

[21]Husband argues that Wife's alimony should not be increased in light of the sizeable mortgage he must pay in order for Wife to take ownership in 2017 of the two commercial buildings awarded in the divorce decree.
(continued...)

-15-

The statute also lists the "standard of living of the parties established during the marriage" as among the factors to be considered. T.C.A. § 36-5-121(i)(9) (2005). With regard to the standard of living, Husband argues that alimony is not intended to place the economically disadvantaged spouse on equal footing with the other, or to allow the obligee spouse to live in the same manner to which she was accustomed during the marriage, citing *Robertson v. Robertson*, 76 S.W.3d 337, 340 (Tenn. 2002). *Accord Crabtree v. Crabtree*, 16 S.W.3d 356, 359-60 (Tenn. 2000).

While the emphasis in *Robertson* and *Crabtree* on the legislative preference for rehabilitative alimony remains good law, the portion of the Court's holding in those cases which minimizes the factor of the parties' standard of living during the marriage has been, for the most part, legislatively abrogated. The *Crabtree* and *Robertson* opinions de-emphasized the parties' prior standard of living as a factor in alimony decisions, including the statement emphasized by Husband in his appellate brief: "The prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony." *Robertson*, 76 S.W.3d at 340. In both cases, the Court held that, if the disadvantaged spouse could be rehabilitated to the point of supporting herself, essentially without regard for the standard of living during the marriage, the trial court was only authorized to award rehabilitative alimony for a limited time. *See id.* at 339-43; *Crabtree*, 16 S.W.3d at 358-61.

In 2005, in an apparent response to the difficulties presented by the *Crabtree* and *Robertson* decisions,[22] Tennessee's legislature substantially revised the alimony statutes, including, *inter*

---

[21](...continued)
The mortgage is substantial indeed. However, Husband was ordered to pay the mortgage at the time of the divorce as part of the property division, before Wiser Company's performance improved, and this ruling was not appealed. Moreover, while these payments inure to Wife's ultimate benefit, they do not pay for her living expenses in the interim.

[22]While the appeal of the intermediate appellate court's decision in *Robertson* was pending before the Tennessee Supreme Court, it was observed:

> *Crabtree* leaves the trial court ill-equipped to deal with this classic situation, in which one spouse pursues a high-powered career while the other contributes to the marriage as a stay-at-home parent and homemaker. . . .
>
> * **
>
> The alimony statutes must provide a method for a trial court to make a fair alimony award to a spouse who has been out of the workforce for many years and who can rehabilitate enough to enter the workforce but earn at best a subsistence living, while the

(continued...)

*alia*, creating a new category of alimony, transitional alimony. ***See*** T.C.A. § 36-5-121(d)(1) (2005).  The amendments included policy statements by the General Assembly emphasizing the value of family arrangements in which one spouse contributes to the family as a homemaker and/or stay-at-home parent, and underscoring the importance of the parties' standard of living during the marriage in determining support:

> 36-5-121.  Decree for support of spouse.--
>
> * * *
>
> (c)(1) Spouses have traditionally strengthened the family unit through private arrangements whereby one (1) spouse focuses on nurturing the personal side of the marriage, including the care and nurturing of the children, while the other spouse focuses primarily on building the economic strength of the family unit. This arrangement often results in economic detriment to the spouse who subordinated such spouse's own personal career for the benefit of the marriage. It is the public policy of this state to encourage and support marriage, and to encourage family arrangements that provide for the rearing of healthy and productive children who will become healthy and productive citizens of our state.
>
> (2) The general assembly finds that the contributions to the marriage as homemaker or parent are of equal dignity and importance as economic contributions to the marriage. Further, where one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

T.C.A. §§ 36-5-121(c)(1), (2) (2005).  The revised spousal support statutes refer repeatedly to determining support in light of either "the standard of living enjoyed during the marriage" or "the post-divorce standard of living expected to be available to the other spouse." ***See*** T.C.A. §§ 36-5-121(d)(2), (e)(1), (f)(1) (2005).  Thus, the parties' standard of living during the marriage and the post-divorce standard of living for the other spouse, while certainly not the only consideration, were adopted by the Legislature as the basic "measuring sticks" in alimony decisions with respect to an economically disadvantaged spouse. ***See Robertson v. Robertson***, No. E2000-01698-COA-RM-CV, 2000 WL 1211314, at *2 (Tenn. Ct. App. Aug. 25, 2000), *rev'd in part*, ***Robertson v. Robertson,*** 76 S.W.3d 337 (Tenn. 2002).  Accordingly,

---

[22](...continued)
bread winner spouse continues to enjoy an affluent lifestyle.

***Page v. Page***, No. W2000-01314-COA-R3-CV, 2001 WL 523960, at *5 (Tenn. Ct. App. May 15, 2001), *no perm. app.* (concurrence in part and dissent in part).

this statutory factor is relevant to the issue of whether the change in Husband's income warrants modification of his alimony obligation.

In this case, in the original divorce proceedings, the trial court granted Wife an award of alimony that allowed her to live independently while attempting to begin a career as an interior designer, but did not provide for a standard of living comparable to the parties' standard of living during the marriage. This was appropriate at that time, considering the erratic performance and uncertain future of Wiser Company. Since the parties' divorce, the earnings of Wiser Company have improved dramatically, and the Company has "stabilized." Husband's standard of living since the divorce remained virtually unchanged from the parties' "lavish" lifestyle during the marriage.

Husband argues that Wife's "need" is unchanged since the parties' divorce, and notes that Wife testified that she is able to pay her current bills on the alimony provided. It was appropriate, of course, for Wife to rescale her expenses to a level commensurate with the alimony she was awarded in the divorce; she is to be commended rather than penalized for keeping her expenses low so as to live within her means. Moreover, in *Bogan*, our Supreme Court explained that "when deciding whether to *modify* a support award, the need of the receiving spouse cannot be the single-most dominant factor." *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001) (emphasis in original).

In the case at bar, at the time of the divorce, Husband was not able to afford alimony that would permit Wife to have a standard of living comparable to the parties' standard during their marriage. The circumstances have clearly changed. Tennessee's General Assembly has stated as a policy matter that our courts, in setting spousal support, should set the support at a level that allows the economically disadvantaged spouse a standard of living that is "reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living . . . available to the other spouse," considering the statutory factors and the equities between the parties. T.C.A. § 36-5-121(c)(2) (2005). This applies to modification proceedings as well as the initial divorce proceedings. Now that Husband can better afford to pay alimony that provides Wife a standard of living that more closely approximates the standard during the parties' marriage, considering the statutory factors and the equities between the parties, he should be required to do so.

Therefore, we must conclude that the trial court's decision not to modify Husband's alimony obligation in light of the very substantial increase in his income amounts to an abuse of discretion. The award of alimony *in futuro* is modified to $10,000 per month, retroactive to the date on which Wife filed her petition to modify the alimony award. We note that the original alimony award was set to decrease by $1000 per month every four years, until its termination twelve years from the date of the decree. In light of the evidence that Wife has

struggled to establish a career after her long absence from the workforce, as well as the fact that her child support will decrease and terminate as the two children reach majority in 2010 and 2014, the alimony amount shall remain constant until the termination date. The termination date for Husband's alimony obligation remains unchanged from the termination date set in the original decree of divorce.

### *Child Support Deviation*

Next, Wife argues that the trial court erred by declining to deviate upward from the Guideline amount of child support. She notes the stark contrast in the quality of life enjoyed at each parent's residence, and contends that the parties' children are entitled to share, in both households, the higher standard of living enjoyed by Husband. Wife argues that the trial court focused on Husband's best interests rather than the children's best interests. Wife also argues that the trial court erred by modifying Husband's child support obligation retroactive to December 10, 2007, the date on which she filed her petition to modify parenting time, rather than the date on which she filed her petition to increase child support, June 7, 2007.

In response, Husband argues that the amount of child support set under the Guidelines carries a rebuttable presumption of correctness, and Wife failed to rebut the presumption. As to the retroactive date of the modification of child support, Husband points out that the trial court had the discretion to modify the child support retroactive to any date between the filing of the petition and the final hearing, and contends that choosing December 10, 2007, was not an abuse of discretion.

An important goal of the Child Support Guidelines is to"[e]nsure that, when parents live separately, the economic impact on the child is minimized, and, to the extent that either parent enjoys a higher standard of living, the child shares in that higher standard." TENN. COMP. R. & REGS. 1240-2-4-.01(3)(e) (2006). In making a child support determination, the trial court "shall apply, as a rebuttable presumption, the child support guidelines." T.C.A. § 36-5-101(e)(1)(A) (2009 Supp.). In its discretion, the trial court may deviate from the Guidelines if "the application of the child support guidelines would be unjust or inappropriate in [the] particular case, in order to provide for the best interest of the child or children, or the equity between the parties." *Id.*; *accord Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005) (citing *State v. Wilson*, 132 S.W.3d 340, 343 (Tenn. 2004); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996)); TENN. COMP. R. & REGS. 1240-2-4-.01(4) (2006) ("These Guidelines are a minimum base for determining child support obligations. The presumptive child support order may be increased according to the best interest of the child for whom support is being considered, the circumstances of the parties, and the rules of this chapter."). If, however, the obligor's net income exceeds $10,000 per month, the standard is different. At this income level, to obtain a deviation from the

Guideline amount, the obligee "must prove, by a preponderance of the evidence, that child support in excess of the amount provided for in the child support guidelines is reasonably necessary to provide for the needs of the minor child or children of the parties." T.C.A. § 36-5-101(e)(1)(B) (2009 Supp.).

On appeal, it is undisputed that Husband's net income exceeds $10,000 per month, and consequently that Wife bore the burden of proving that an upward deviation from the Guideline amount of child support was reasonably necessary to provide for the parties' children. In denying Wife's request for a deviation, the trial court stated that it declined to deviate upward from the Guideline amount of child support because Husband "has the children 50% of the time and pays for the medical and dental expenses, as well as provides the oldest child with a vehicle."

In her testimony, Wife described the stark contrast in the children's standard of living during her residential parenting time as compared to when they spent residential parenting time with Husband. Wife said that it was impossible for her to compete with the amount of money that Husband expended on their children, pointing out Husband's purchase of a new, "fully loaded" vehicle and a lavish birthday party for the parties' daughter, their membership in the local country club, and Husband's continued regular vacations with the children. Wife said that she cannot afford such expenditures, and often has to deny the children's requests and explain that she cannot afford certain items.

In his testimony, Husband largely corroborated Wife's assertions. He said that the children often accompany him on trips, both pleasure trips and business trips, and said that he purchased a new car for their daughter when she turned sixteen. On appeal, he relies on the reasons given by the trial court for its decisions, and contends that the proof showed that the Guideline amount of support was sufficient for the children's needs.

One of the reasons proffered by the trial court for its decision is the fact that the children spend half of their time in Husband's household. This is puzzling, since the allocation of residential parenting time is factored into the calculation of Husband's basic child support obligation under the Guidelines. Husband's purchase of an automobile for the daughter is relevant, but certainly not determinative in and of itself. Husband is apparently unperturbed by the fact that his children split their time in sharply contrasting environments, one modest and middle-class, the other privileged and wealthy. In this situation, the children share in Husband's "higher standard of living" only when they reside with him. This is not consonant with the goal of the Guidelines, to minimize the economic impact on the children of having parents living separately, and ensure that the children fully share the standard of living enjoyed by the parent with the most financial resources.

-20-

However, our modification of Wife's alimony award should increase the overall financial resources available to Wife, and ease somewhat the contrast in the standard of living the children experience as they move between their parents' households. Under these circumstances, considering the abuse of discretion standard of review, we affirm the trial court's decision to decline to grant an upward deviation from the Guideline amount of child support.

With regard to the date to which modification in child support was made retroactive, the trial court gave no reason for making the modification retroactive to December 10, 2007, the date on which Wife filed her petition to modify parenting time, rather than to June 7, 2007, the date on which Wife filed her petition to modify child support. We recognize that the decision as to the date on which modification is made effective is within the trial court's discretion. *See Huntley v. Huntley,* 61 S.W.3d 329, 339 (Tenn. Ct. App. 2001) (quoting *Bjork v. Bjork*, No. 01A01-9702-CV-00087, 1997 WL 653917, at *8 (Tenn. Ct. App. Oct. 22, 1997)). However, in this case, Husband's income increased dramatically well before Wife filed her petition to modify child support. Under these circumstances, we must conclude that the trial court abused its discretion by not making the modification retroactive to the date of Wife's petition, June 7, 2007.

### *Attorney Fees*

Wife argues that the trial court erred in declining to award her attorney fees. She notes that she was forced to proceed to trial, and ultimately appeal, in order to appropriately increase Husband's child support and alimony obligations in light of his significant increase in income. Wife asserts that the attorney fees she incurred with respect to Husband's refinancing of the debt on the two commercial buildings awarded to her constituted enforcement of the original alimony decree, and she seeks an award of these attorney fees as well. Finally, Wife seeks an award of attorney fees incurred on appeal.

In response, Husband notes that the decision to award attorney fees lies in the discretion of the trial court, and argues that the trial court's denial of Wife's request for attorney fees was not an abuse of discretion. Husband points out that some of Wife's attorney fees were incurred pursuing a modification of the parenting plan, which she ultimately abandoned.

Tennessee Code Annotated § 36-5-103(c) authorizes a trial court to award attorney fees incurred to increase child support. *See, e.g., Richardson*, 189 S.W.3d at 729; *Huntley*, 61 S.W.3d at 341. Tennessee Code Annotated § 36-5-101 authorizes an award of attorney fees incurred to increase alimony. *Evans v. Evans*, No. M2002-02947-COA-R3-CV, 2004 WL 1882586, at *15 (Tenn. Ct. App. Aug. 23, 2004), *no perm. app.*

In this case, Wife's petition to increase alimony was denied. However, Wife's request to increase child support, at least up to the maximum Guideline amount, was granted.

At trial, Husband took the position that, with an average income of over $50,000 per month, his child support for two children should remain at $1498 per month. In support of this position, Husband argued that he paid for the children's medical insurance and dental expenses, and gave generous gifts, such as the car to the sixteen-year-old daughter. This argument can only be described as chutzpah. Although the trial court rejected Husband's argument and raised Husband's child support obligation to the maximum under the Guidelines, it did not award Wife attorney fees for having to go to trial to obtain this increase. The trial court's order does not explain its reasoning for failing to award attorney fees with respect to the increase in child support.

"In cases involving the . . . support of children, . . . it has long been the rule in this State that counsel fees incurred on behalf of minors may be recovered when shown to be reasonable and appropriate." *Deas v. Deas*, 774 S.W.2d 167, 169 (Tenn. 1989). The *Deas* Court stated: "There is no absolute right to such fees, but their award in . . . [child] support proceedings is familiar and almost commonplace." *Id.* at 170; *accord Taylor v. Fezell*, 158 S.W.3d 352, 360 (Tenn. 2005) (quoting *Deas*). This Court has explained "that the award of fees is for the benefit of the child and is a necessary part of, or inseparable from, the child's right to support." *Evans*, 2004 WL 1882586, at *12. "[F]ee awards in child support cases . . . protect the child's, not the parent's, interests and remedies" *Id.* (citation omitted). The *Deas* Court expounded on the policy reasons for the fee awards:

> [C]hildren are entitled to their reasonable counsel fees incurred in their behalf, otherwise they would be helpless to enforce their right of support and maintenance against a reluctant father. . . . There is a sound public policy which places in easy reach of the minor children the machinery of the law to compel their rights by suit against an unwilling father. The right to have him pay reasonable counsel fees is inseparable from this right.

*Deas*, 774 S.W.2d at 169 (quoting *Graham v. Graham*, 204 S.W. 987, 989 (Tenn. 1918)).

In this case, Husband would no doubt chafe at analysis that incorporates phrases such as "reluctant father" or "unwilling father," because the children reside with him half of the time and he is generous, nigh, indulgent with them when they are with him. The record indicates, however, that he was unwilling to agree to pay child support appropriate to his income, and was content to have the children continue to share in his standard of living only when they are with him.

Under the circumstances of this case, the trial court's failure to award attorney fees to Wife in connection with her request for a modification of Husband's child support was an abuse of discretion, and an "award of reasonable attorney's fees is in order." *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993). In light of our modification of Husband's alimony obligation, an award of attorney fees incurred by Wife at the trial court level in connection with her efforts to increase the alimony is in order as well. *See Vaughn v. Vaughn*, No. 01A01-9707-CV-00347, 1998 WL 205204 (Tenn. Ct. App. Apr. 29, 1998), *no perm. app*.

Wife also seeks attorney fees incurred at the trial court level in connection with Husband's refinancing of the two commercial buildings awarded to her. Husband argues that it was unnecessary for Wife to incur attorney fees on this issue, and that her initial unwillingness to agree to the refinancing proposed by Husband was unreasonable.

It is undisputed that, however necessary it was for Husband to refinance the debt on the buildings, his refinancing proposal was complex, involved more than one financial institution, and initially included an increase in the debt on the buildings, contrary to the trial court's divorce decree. Thus, Wife's decision to retain counsel to help her evaluate the refinancing proposals was reasonable. The record also shows that Wife did not receive assets or financial resources in the divorce that would enable her to pay attorney fees to protect her interest in the only substantial property that she received in the property division.

However, we have found no authority which would permit us to award Wife attorney fees with respect to the refinancing of the buildings. Wife argues on appeal that such an award would be, in essence, in connection with alimony, because the buildings will provide support for Wife after the alimony ends. We cannot agree with this argument; while the buildings will provide income to Wife, they are part of the original property division. Thus, we affirm the trial court's denial of attorney fees with respect to the refinancing of the buildings.

Wife also requests an award of her attorney fees incurred in this appeal. This request is granted. We remand to the trial court for a determination of the amount of reasonable attorney fees incurred to increase child support and alimony, and in the instant appeal.

## CONCLUSION

The trial court's denial of Wife's petition to increase alimony is reversed, and Husband's alimony award is modified to $10,000 per month. The termination date for the alimony is unchanged from the date set in the original decree. The trial court's denial of Wife's request for an upward deviation from the Guideline amount of child support is affirmed. The increase in child support to the Guideline amount of support is modified to be retroactive to the date Wife filed her petition to increase child support. The trial court's denial of Wife's request for attorney fees in connection with her request to increase child support and alimony is reversed, and Wife is awarded her reasonable attorney fees incurred at the trial level with respect to these issues. The denial of attorney fees incurred in connection with the refinancing is affirmed. Wife is awarded her reasonable attorney fees incurred on appeal. The cause must be remanded to the trial court for a determination of a reasonable award of attorney fees.

The decision of the trial court is affirmed in part, reversed in part, and modified as set forth above, and the cause is remanded for further proceedings consistent with this Opinion.

The costs of this appeal are taxed to Appellee Cyrus W. Wiser, Jr., for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE