IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 25, 2015 Session

# AMELIA JANE LANGLO v. ROGER ELDAR LANGLO

**Appeal from the Circuit Court for Bradley County**
**No. V09323    Hon. Lawrence H. Puckett, Judge**

---

**No. E2014-00548-COA-R3-CV-FILED-APRIL 20, 2015**

---

This appeal arises from the parties' post-divorce issues. The mother filed a petition for contempt for failure to remit alimony. The father responded with a petition to reduce his alimony obligation. He later orally requested to modify his child support obligation. Following a hearing, the trial court denied the mother's petition for contempt, the father's petition to reduce his alimony obligation, and the father's request to reduce his child support obligation. The father appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Joshua H. Jenne, Cleveland, Tennessee, for the appellant, Roger Eldar Langlo.

Jerry Hoffer, Cleveland, Tennessee, for the appellee, Amelia Jane Langlo.

## OPINION

## I.  BACKGROUND

The parties, Amelia Jane Langlo ("Mother") and Roger Eldar Langlo ("Father") were divorced by agreement in November 2009. Pursuant to the agreement, Father was tasked with remitting approximately $1,000 per month in child support for their minor child. In setting his support obligation, the parties completed a child support worksheet that indicated that Mother did not have an income, while Father had an income of approximately $8,316 per month. Following several hearings, Father was also tasked with remitting rehabilitative

alimony once the marital residence was sold. Specifically, Father was required to remit $1,500 per month for 12 months and then $1,000 per month for an additional 36 months. The court conditioned the amount of the spousal support obligation on Mother's living arrangement, namely Father's obligation for the first 12 months would be reduced to $1,000 per month if Mother lived with her parents.

On April 10, 2013, Mother filed a petition for contempt, alleging that Father had only remitted $500 in spousal support even though she was entitled to $1,500 per month following the sale of the marital residence in September 2012. She acknowledged that the child support payments were current through a wage assignment but asserted that she only received payment from one of his paychecks each month. She requested a wage assignment from each paycheck for future alimony and child support payments through either Father's employer or the State of Tennessee Child Support Services Division. She also sought permission to claim the minor child as an exemption for tax purposes each year.

Father responded by denying wrongdoing and asserting that his spousal support obligation was limited to $1,000 per month because Mother lived with her parents. He also filed a counter-petition to modify his spousal support obligation, arguing that Mother had failed to make a "measurable effort to rehabilitate herself" or strive for self-sufficiency; therefore, she was not entitled to further payment from him. Thereafter, he orally requested modification of his child support obligation.

On January 24, 2014, a hearing was held on the petition for contempt and the corresponding counter-petitions for modification of the alimony and child support obligations. Mother, who was 46 years old at the time of the hearing, claimed that she did not receive any payments from Father until February 2013. She claimed that he only paid $1,000 per month following the initial payment.

Mother testified that she moved to Texas in December 2011. She lived with her parents in their residence when she first moved. Since May 2012, she lived in a home owned by her parents that was approximately 30 minutes from their residence. She claimed that she was tasked with remitting $1,500 in rent each month. She stated that her parents allowed her to remain in the residence even though she was unable to regularly provide rental payments. She said that she attempted to pay for expenses related to the house when possible. She supported herself with a credit card and money she borrowed from her father.

Mother acknowledged that her 2012 tax return reflected an adjusted gross income of $71,500. She asserted that she did not work in 2012 and that the income reflected on her tax return reflected dividends and capital gains on her inheritance account. She stated that she withdrew everything from her account to pay her medical bills and that she was required to

-2-

file a tax return to reflect the withdrawal. She claimed that she did not receive a regular income because she was unemployed and unable to work due to her medical condition.

Mother explained that she had bilateral knee replacement surgery in 2008. Since that time, she had ongoing health issues and complications. She underwent surgery on her foot in November 2012, and she recently met with a knee specialist, who advised her that both of her knees would need "revisions." He also recommended bariatric surgery to lower her weight before she could receive the knee procedures.

Mother testified she had been unable to maintain regular, full-time employment since 2008. She stated that in December 2011, she worked for her father for a short period of time until her health declined again. She stated that she also acquired a position at an arts and crafts store in 2013 but that she quit shortly thereafter when they asked her to work in the early morning hours, which would require her to leave her minor child without supervision. The record reflects that she received approximately $81 in 2013 for her short-term employment at the store. Mother claimed that she did not qualify for disability benefits.

Mother still sought employment despite her declining health. She interviewed with Re/Max and was offered the position, pending her completion of the licensing requirements. However, she was unable to pursue the position because of her knee issues. She was scheduled to interview at a company when she returned to Texas following the hearing. She had applied for several other employment positions but had not received any other interviews. She opined that she was not a competitive applicant because she did not have a college degree or work experience. She needed approximately 15 credit hours to receive her bachelor's degree.

Father testified that he simply did not have enough money to regularly remit his alimony payments until February 2013. He explained that he paid for the majority of the expenses during the separation and that he was reliant upon credit cards and lived in an airport hangar during that time. He stated that he eventually secured a rental apartment and lived with a roommate until August 2013. He asserted that he paid for some of Mother's medical expenses and for half of the down payment for the minor child's braces. He also regularly paid for travel expenses to facilitate his visitation with the minor child. He stated that his child support obligation was automatically deducted from his paycheck and that he begin remitting alimony as soon as he had enough money. He testified that he currently lived with his fiancé and that he was responsible for paying approximately half of her $1,400 mortgage payment. He conceded that he took two vacations with his fiancé but explained that he used "leftover money from a garage sale" to fund his portion of the trips.

Father testified that he did not know Mother had access to the funds that were reflected on her 2012 tax return. He related that his 2012 tax return reflected an adjusted gross income of $89,629. He stated that since 2012, he may have received a nominal raise in the amount of $1,200 per year but that his income remained relatively the same. He admitted that he continued contributing to his 401(k) even when he was unable to afford his alimony payments.

Following the hearing, the trial court did not hold Father in contempt. However, the court denied Father's petition for modification of his spousal support obligation, finding that he had failed to establish a substantial and material change in circumstances. The court also found that Father was responsible for remitting $1,500 per month for the first 12 months. The court specifically held that Mother did not live with her parents during that time period. Relative to child support, the court held that Mother was permitted to claim the minor child on her tax return each year as an exemption. The court reserved ruling on Father's oral request for modification of his child support obligation, finding that he had failed to present any evidence concerning Mother's current income. This timely appeal followed.

## II. ISSUES

We restate the issues raised on appeal as follows:

A. Whether the court erred in denying the petition to modify the spousal support obligation.

B. Whether the court erred in calculating the spousal support arrearage.

C. Whether the court erred in refusing to modify the child support obligation.

D. Whether either party is entitled to attorney fees on appeal.

## III. STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of

fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

"[M]odification of a spousal support award is 'factually driven and calls for a careful balancing of numerous factors.'" *Wiser v. Wiser*, 339 S.W.3d 1, 11 (Tenn. Ct. App. 2010) (quoting *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)). "Generally, the trial court's decision on whether to modify spousal support is not altered on appeal unless the trial court abused its discretion." *Id.* (citing *Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999)). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). "Consequently, when reviewing . . . an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (citations omitted).

Modification of child support in this state is governed by Tennessee Code Annotated section 36-5-101(g). *Kaplan v. Bugalla*, 188 S.W.3d 632, 636 (Tenn. 2006). "In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines" that are promulgated by the Tennessee Department of Human Services Child Support Service Division. Tenn. Code Ann. § 36-5-101(e)(1)(A); *see generally* Tenn. Comp. R. & Regs. 1240-2-4. Trial courts have discretion to set the amount of child support within the strictures of the Guidelines promulgated by the Tennessee Department of Human Services. Accordingly, we review a trial court's decision involving child support for an abuse of discretion. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). In reviewing the trial court's decision we consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the trial court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *Id.*

## IV. DISCUSSION

### A.

Father argues that the trial court erred in refusing to modify his spousal support obligation. He asserts that Mother was not entitled to further support because she failed to

strive toward self-sufficiency. He notes that she voluntarily quit at least two jobs and that she refused to provide evidence of her attempts to obtain other employment. He claims that the court also failed to make the requisite findings of fact in denying his petition. Mother responds that the trial court made the requisite findings before properly denying the petition.

"Alimony" is defined, in pertinent part, by Black's Law Dictionary, 9th edition, as

[a] court-ordered allowance that one spouse pays to the other spouse for maintenance and support . . . after they are divorced. Alimony is distinct from a property settlement.

Tennessee recognizes four different types of alimony: rehabilitative alimony, transitional alimony, alimony in futuro, and alimony in solido. The trial court in this case awarded rehabilitative alimony, which is temporary support intended to assist the economically disadvantaged spouse in obtaining the education or training necessary to allow him or her to achieve a reasonable standard of living in comparison to the standard of living maintained by the parties during the marriage or to the post-divorce standard of living available to the other spouse. Tenn. Code Ann. § 36-5-121(e)(l).

Awards of rehabilitative alimony remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of a substantial and material change in circumstances. For rehabilitative alimony to be extended beyond the term initially established by the court, or to be increased in amount, or both, the recipient of the rehabilitative alimony shall have the burden of proving that all reasonable efforts at rehabilitation have been made and have been unsuccessful.

Tenn. Code Ann. § 36-5-121(e)(2). In requesting a modification of alimony, "[i]t is not sufficient to simply show a change of circumstances." *Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991). Instead, "[t]he change must be substantial and material." *Id.* "[A] change in circumstances is considered to be 'substantial' when it significantly affects either the obligor's ability to pay or the obligee's need for support." *Bogan*, 60 S.W.3d at 728 (citing *Bowman*, 836 S.W.2d at 568). A change is not material if the change was "contemplated by the parties at the time of the divorce." *Wright v. Quillen*, 83 S.W.3d 768, 772 (Tenn. Ct. App. 2002). "A substantial and material change in circumstances does not automatically entitle the petitioner to a modification." *Id.* at 773. Rather, "the petitioning party must [also] demonstrate that a modification of the award is justified." *Id.*

Here, Father sought to reduce or eliminate his support obligation. Thus, he was tasked with establishing that a substantial and material change in circumstances occurred that necessitated the modification. The trial court, in its bench opinion that was specifically incorporated into the written order, found that Father failed to establish a sufficient change as evidenced by Mother's continued medical issues and inability to work because of her health. The court also found that Father had the ability to pay.

Indeed, Father testified that he had trouble remitting spousal support following the divorce but that he began paying when he was able. The record reflects that he had stable employment and did not present any evidence to establish that he could not afford the support payments. In contrast, Mother's ability to work declined since the time of the divorce. She underwent additional medical procedures and would likely require further surgery to address her underlying health issues. As a result, she was unable to maintain regular employment. While she had access to money she had inherited as reflected in her 2012 tax return, she testified that she spent the majority of the funds on her medical bills. With these considerations in mind, we conclude that the trial court did not abuse its discretion in finding that Father failed to prove a substantial and material change in circumstances that would necessitate a modification in his support obligation.

B.

Father argues that the trial court erred in calculating the amount of spousal support owed from September 2012 through August 2013. He claims that Mother was only entitled to $1000 per month because she lived with her parents. Mother responds that the trial court did not err in calculating the arrearage.

We give great weight to the factual findings of the trial court which rest on determinations of witness credibility. *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996). Accordingly, we will not reevaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). The record reflects that Mother lived with her parents when she first moved to Texas but that she moved to a rental home owned by her parents in May 2012. The trial court found that Mother was not living with her parents for purposes of setting the amount of support owed. We will not disturb that finding.

C.

Father asserts that the trial court failed to consider Mother's investment income before denying his oral request to modify his child support obligation. Mother responds that the issue of child support was not properly before the court because Father never filed a written

request for modification of his obligation. She alternatively argues that the issue of child support was reserved by the court for a time when current evidence of the parties' income could be submitted for review.

In this state, child support is governed by Tennessee Code Annotated section 36-5-101. "In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines" that are promulgated by the Tennessee Department of Human Services Child Support Service Division. Tenn. Code Ann. § 36-5-101(e)(1)(A); *see generally* Tenn. Comp. R. & Regs. 1240-02-04. The guidelines "are a minimum base for determining child support obligations. The presumptive child support order may be increased according to the best interest of the child for whom support is being considered, the circumstances of the parties, and the rules of [the] chapter." Tenn. Comp. R. & Regs. 1240-02-04-.01(4).

Child support judgments are not "subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties." Tenn. Code Ann. § 36-5-101(f)(1). A modification of the support owed may be requested pursuant to the guidelines under certain circumstances. Tenn. Comp. R. & Regs. 1240-02-04-.05(6). "To determine if a modification is possible, a child support order shall first be calculated on the Child Support Worksheet using *current evidence* of the parties' circumstances." Tenn. Comp. R. & Regs. 1240-02-04-.05(3) (emphasis added). If a significant variance exists between the current order and the proposed amount, "such a variance would [generally] justify the modification of a child support order." Tenn. Comp. R. & Regs. 1240-02-04-.05(3).

Here, Father made an oral request to modify his child support obligation. Assuming that his oral request was sufficient pursuant to Tennessee Code Annotated section 36-5-101(f)(1), his obligation was not subject to modification prior to October 2013, when the amended petition was filed and the oral request was made. Father asserts that Mother's 2012 tax return should have been considered by the trial court to establish her income in October 2013. We disagree. Mother testified at trial that she used the funds reflected in the 2012 return to pay medical bills and that she was currently unemployed and without any form of income. Father did not present any evidence to rebut Mother's testimony that she only received nominal income in the amount of $81 in 2013. Accordingly, we conclude that the trial court did not err in refusing to modify Father's child support obligation when he failed to present current evidence of the parties' circumstances to establish a significant variance.

D.

The parties request attorney fees on appeal. Tennessee Code Annotated section 27-1-122 provides for an award of sanctions in the form of attorney fees when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). An appellate court's decision on this issue is discretionary, and this court is generally reluctant to award such damages because we do not want to discourage legitimate appeals. *Whalum v. Marshall*, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006). Following our review, we respectfully deny the request for attorney fees on appeal.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Roger Eldar Langlo.

_____
JOHN W. McCLARTY, JUDGE