
# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 14, 2016 Session

## JAMES S. SCHRADE v. CASSANDRA JEAN AMENT SCHRADE

**Appeal from the Probate and Family Court for Cumberland County**
**No. 17129     Larry Michael Warner, Judge**

---

### No. E2016-01105-COA-R3-CV

---

This appeal concerns an effort to reduce an alimony obligation. James S. Schrade ("Husband") filed a petition for reduction of alimony in the Probate and Family Court for Cumberland County ("the Trial Court") against ex-wife Cassandra Jean Ament Schrade ("Wife").[1] Husband cited changed economic conditions that rendered him unable to meet his alimony obligation without tapping into his separate property. At trial, Husband also presented proof that a rebuttable presumption arose that Wife did not need the alimony as her adult children lived with her. The Trial Court found no material change in circumstances and also declined to find that the rebuttable presumption applied. Husband appeals. Finding the language of the marital dissolution agreement ("the MDA") unequivocal and as market fluctuations are foreseeable, we affirm the Trial Court in its finding of no material change in circumstances. However, Husband presented sufficient proof to trigger the statutory rebuttable presumption for cohabitation with third parties, and we remand to the Trial Court for a determination on that issue. We affirm, in part, and, vacate, in part, the judgment of the Trial Court, and remand for further proceedings consistent with this Opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate and Family Court Affirmed, in Part, and, Vacated, in Part; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and JOHN W. MCCLARTY, JJ., joined.

Clayton M. Whittaker, Chattanooga, Tennessee, for the appellant, James S. Schrade.

Cassandra Jean Ament Schrade, Crossville, Tennessee, pro se appellant.

---

[1] Although the parties have long since been divorced, we refer to them as Husband and Wife for clarity and convenience.

# OPINION

## Background

Husband and Wife divorced in 2008. Under the MDA, Husband was required to do the following, in relevant part:

**Investment Accounts and Retirement Accounts:** The parties acknowledge that they have been living on the income from an Orange County Trust and a stock portfolio, and that these funds from this Trust and this stock portfolio are owned by the Husband, or attributable to him. The Husband agrees that he will pay the Wife from these funds 35% of the regular monthly distributed amounts, each month, from both accounts. Further, from the stock portfolio, the Husband agrees that regardless of the distribution from the stock portfolio, the Wife shall never receive less than $1,200.00 per month, even if $1,200.00 is greater than the previously agreed 35%. This 35% of the Orange County Trust and stock portfolio, as indicated above, shall be received by the Wife as periodic alimony, and said payments shall be begin on the first day of the month following the entry of the Final Judgment of Divorce.

In September 2013 Husband filed a petition to modify his alimony support. Husband's petition stated the following, in part:

6. With respect to alimony, Petitioner would show that when the parties divorced, the annual dividends from the Orange County Trust were approximately $80,000.00. Since then, the amount of dividends has dropped dramatically. For example, last year, the trust produced only $55,147.00 annually. This year, the trust had produced only $22,460.00 through July. Petitioner cannot invade the corpus of that trust. A graph and chart showing the decline in income from the Orange County Trust is attached hereto as collective Exhibit D.

7. At the time of the divorce, based on the current economic conditions, Petitioner reasonably believed that the Orange County Trust would produce annual income of $100,000.00 to $120,000.00. However, the opposite has proven true, and the income from said trust continues to significantly and materially decline.

8. From the Knoxville account, Petitioner takes a distribution of $3,776.00 each month. From that amount, Petitioner pays Respondent $1,200.00. That account, which held $1,876,311.00 in 1997, was down to $294,708 on August 31, 2013.

9. Petitioner has lost the rental income that he was receiving when he divorced, and he is no longer able to produce income from farming due to his health, current market conditions, and because Respondent has significantly interfered with Petitioner's access to the farming acreage. Petitioner is now totally dependent on income from the Orange County Trust and the Knoxville account.

10. Petitioner is at risk of losing his health insurance and is in danger of not being able to afford basic needs, including medical treatment. A list of Petitioner's average monthly expenses is attached as Exhibit E.

11. The changes in Petitioner's investment income since the divorce constitute a substantial and material change in circumstances, and those circumstances were not anticipated by Petitioner at the time that the First or Amendment to MDA was executed.

In March 2016, a hearing was held on Husband's petition to modify alimony. Husband and Wife testified. Husband testified, in part, as follows:

Q. In regards to the way that this has played out after the divorce, can you tell the Court what is the current status of the funding for the Orange County Trust? Is it sufficient is what I'm asking.
A. I have no control over it. The history of that account is that my father and my uncle and several others that sat on the Board of Directors of the bank, he set that trust up with the bank that he was a director of.
Q. Let me ask you. So in regards to the Orange County Trust, because you can't touch the corpus, has it been depleted?
A. No.
Q. The ordinary affects of the market downturn that occurred in 2008, were there any affects on the Orange County Trust?
A. Oh, yes, yes.

***

Q. Did you believe at the time when you negotiated that divorce the economy would not improve?
A. I thought it was at its bottom and would go back to where I was earning 100,000 out of the account.
Q. And can you tell the Court what has happened to your fund?
A. Well, it's come back slightly. At its peak maybe in the late 90's, it was at 2.4 million, I believe, and currently it's maybe 1.6 million.
Q. You're not able at this point because that's the only source of your income to draw Social Security or anything like that?

A. That's correct.

Q. All right. So that's what you rely on minus the one-third, 35 percent to Ms. Schrade?

A. That's correct.

Wife testified as follows:

Q. As a consequence of the first sentence in Paragraph 4 and then Paragraph 16-A, you recognize that Mr. Schrade never has had the obligation to make up any difference between the income and the stock portfolio that has fallen short of the $1, 200 minimum from his own personal funds?

A. Okay.

Q. Okay. And you recognize that as a consequence of that, this paragraph does not deal with the circumstances as we already pointed out, I think, what happens when the income falls below $1,200?

A. I guess it's for the judge to decide that; isn't it?

Q. Well, I don't know. I'm just asking you about what's on the paper and what you-all agree to. There's nothing on here that says anything about what happens if the income from stock portfolio falls below the $1,200 floor?

A. It says what it says.

Q. I know it does, because I can read it, too. But my question to you simply is this: You-all did not provide for that circumstance?

A. No.

***

Q. Your son resides in another property that you own, he does not pay rent?

A. He does.

Q. Okay.

A. Well, he doesn't pay money.

Q. What does he -- you say he's paying rent, so what does he do that's not money?

A. He chops my wood, you know, he does things for me that's just over and beyond.

Q. Okay. He helps you out with physical labor and stuff around the place?

A. Right, he mows and he's there, he helps.

Q. Okay.

A. And Brica's the same way. She lives with me because of my health.

Q. All right. And you said that, in your deposition, that you spent approximately 80 to $85,000 on repairs for the have or -- let me take that back. You gave $5,000 to Brica for her school?
A. Yeah.

Wife argued that the issue of third party support and a rebuttable presumption had not been pled and was not properly before the court.

In April 2016, the Trial Court entered its final order denying Husband's petition to modify alimony, stating the following:

> This matter came to be heard on the 16th day of March, 2016 before the Honorable Larry M. Warner, Judge of the Probate & Family Court for Cumberland County, Tennessee. Based on the Motions filed by both parties, arguments of counsel, testimony of parties, and considering the record as a whole, the Court finds as follows:
>
> 1. That these parties were divorced by order of this Court on May 20, 2008 that subsequent to the entry of Final Decree a Martial Dissolution Agreement executed on April 10, 2008 provides on page 6 paragraph 4 "that the Wife shall receive from investment and retirement accounts 35% of the regular monthly distributed amounts each month from both accounts". It is further agreed that "the Wife shall never receive less than $1,200.00 per month, even if $1,200.00 is greater than the previously agreed 35% from the stock portfolio only."
>
> 2. The Marital Dissolution Agreement in the same paragraph provides that "these funds shall be received by the Wife as periodic alimony."
>
> 3. The Court is mindful of the provisions of Tennessee Code Annotated 36-5-121 and the necessary findings that are required by the Court in order to modify an award of alimony.
>
> 4. The Court finds that the plain language of the Marital Dissolution Agreement in this case provides that the alimony award is subject to modification
>
> 5. The Court further finds and is mindful pursuant to T.C.A. 36-5-121 that the Court must then determine whether or not there has been a substantial and material change of circumstances.
>
> 6. The Court in reviewing this statute understands the burden is on the Petitioner, James S. Schrade, to show the change of circumstances.

7. The Court determines that there has not been a material and substantial change of circumstance(s) that was not contemplated by the parties at the entry of the Marital Dissolution Agreement.

8. The Court after reviewing the Marital Dissolution Agreement finds that the parties anticipated the variances of the stock market by putting in a minimum floor of $1,200.00 in the original Marital Dissolution Agreement with regards to payment made from the stock portfolio account. The Court finds that this change of circumstances was contemplated by the parties.

9. Based on this the Court finds that the Motion to Modify the Marital Dissolution Agreement relative to the alimony provision is not well taken and the same is dismissed.

10. For the first time at trial the Petitioner raised the issue of third party beneficiary pursuant to T.C.A. 36-15-121 as a means of modification. The Court heard proof on this issue and did not find a material change of circumstance.

11. That the costs of this cause are taxed against the Petitioner, which have already been paid.

12. That the attorneys, after good and valuable services being rendered, is relieved of any other and further duties as it relates to this matter after the expiration of thirty (30) days of entry of this Order.

Husband timely filed an appeal to this Court.

## Discussion

Although not stated exactly as such, Husband raises the following two issues on appeal: 1) whether the Trial Court abused its discretion in declining to find a material change in circumstances such as to reduce Husband's alimony obligation; and, 2) whether the Trial Court erred in declining to terminate or suspend Husband's alimony obligation based upon a rebuttable presumption raised by Wife's adult children living with her that she no longer needs the alimony. Wife, proceeding pro se, filed no brief on appeal.

Our Supreme Court set out the standard of review to be applied in cases involving a request for modification of a spousal support order stating:

Because modification of a spousal support award is "factually driven and calls for a careful balancing of numerous factors," *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989), a trial court's decision to modify support payments is given "wide latitude" within its range of

-6-

discretion, *see Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999). In particular, the question of "[w]hether there has been a sufficient showing of a substantial and material change of circumstances is in the sound discretion of the trial court." *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999) (citations omitted). Accordingly, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *see also Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999) ("As a general matter, we are disinclined to alter a trial court's spousal support decision unless the court manifestly abused its discretion."). When the trial court has set forth its factual findings in the record, we will presume the correctness of these findings so long as the evidence does not preponderate against them. *See, e.g., Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000); *see also* Tenn. R. App. P. 13(d).

*Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).

Regarding a modification of periodic alimony, this Court discussed as follows in the *Cooley* case:

This case involves the modification of an award of alimony *in futuro*. Alimony *in futuro* "is intended to provide support on a long-term basis until the death or remarriage of the recipient." *Gonsewski*, 350 S.W.3d at 107 (citing Tenn. Code Ann. § 36-5-121(f)(1)). Alimony *in futuro* can be awarded "when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." Tenn. Code Ann. § 36-5-121(f)(1). The statute governing spousal support in Tennessee provides that alimony *in futuro* remains in the court's control for the duration of the award and "may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of a substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A).

A court may not modify or terminate a spousal support award until it first finds that a sufficient change in circumstances has occurred since the entry of the original support decree. *Bogan*, 60 S.W.3d at 727-28 (citing Tenn. Code Ann. § 36-5-101(a)(1)). Thus, in most cases, the party seeking modification of an alimony award must initially prove that a substantial and material change in circumstances has occurred. *See Malkin v. Malkin*, ⸺ S.W.3d ⸺, No. W2014-00127-COA-R3-CV, 2015 WL 1423346, at *3

(Tenn. Ct. App. Mar. 26, 2015), *perm. app. denied* (Tenn. July 21, 2015) (quoting *Wiser v. Wiser*, 339 S.W.3d 1, 12 (Tenn. Ct. App. 2010)). In the present case, however, the parties' MDA slightly altered the initial showing required of a party seeking to modify Husband's alimony *in futuro* obligation. In pertinent part, the MDA states that "[t]he alimony in futuro may be modified by either party upon a showing of a *material, unanticipated change in circumstances*." (emphasis added). When the contractual language used in an MDA is plain and unambiguous, the Court's function is to interpret and enforce the MDA according to its plain terms. *See Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561-62 (Tenn. Ct. App. 2003) (citations omitted). In this case, the plain language of the MDA provides that Husband's alimony *in futuro* obligation may be modified upon a showing of a "material, unanticipated" change in circumstances. Accordingly, it appears that the parties disposed of the statutory requirement that such a change in circumstances be "substantial." As such, our first task is to determine whether Wife met her burden of proving a change in circumstances that was not anticipated or contemplated by the parties at the time of their divorce. *See Wiser*, 339 S.W.3d at 12 ("A change is material if it was not 'anticipated or [within] the contemplation of the parties at the time' of the original divorce.") (quoting *Bogan*, 60 S.W.3d at 728).

*(Cooley) v. Cooley*, No. W2015-00583-COA-R3-CV, 2016 WL 369585, at \*\*5-6 (Tenn. Ct. App. Jan. 29, 2016) (footnotes omitted), *perm. app. dismissed*.

We first address whether the Trial Court abused its discretion in declining to find a material change in circumstances such as to reduce Husband's alimony obligation. The MDA set a floor of $1,200 per month that Wife would receive in periodic alimony. Husband contends that the parties could not have foreseen that the Stock portfolio ever would produce an income lesser than $1,200 per month. According to Husband, he never should be required to tap into his separate property to meet the minimum obligation under the terms of the MDA.

The language of the MDA is clear and unequivocal. The baseline for Wife's alimony is at least $1,200 per month "regardless of the distribution from the stock portfolio. . . even if $1,200.00 is greater than the previously agreed 35%.". We find unavailing Husband's arguments about the unforeseeability of the market downturn. On the contrary, that the market fluctuates is both self-evident and acknowledged by the MDA itself. The MDA provision setting a baseline minimum of $1,200 reasonably could be viewed as a nod to the market's instability, establishing a minimum despite its variations. The lone fact that the stock market underwent a sharp downturn in 2008,

-8-

while a devastating economic event, cannot in itself constitute a material change in circumstances because such downturns, even drastic ones, are part and parcel of the risk of the stock market and are therefore eminently foreseeable. Further, the parties, as found by the Trial Court, "anticipated the variances of the stock market by putting in a minimum floor of $1,200.00 . . . ." We affirm the Trial Court in its finding of no material change in circumstances such as to support reducing Husband's alimony obligation to Wife.

The next issue we address is whether the Trial Court erred in declining to terminate or suspend Husband's alimony obligation based upon a rebuttable presumption raised by Wife's adult children living with her that she no longer needs the alimony. Regarding the rebuttable presumption for suspension of alimony in the event of third party cohabitation with an alimony recipient, this Court has discussed as follows:

> The statutory language contained in Tennessee Code Annotated section 36-5-121(f)(2)(B) is clear that the remedy for the obligor is a suspension of [all or part of the] alimony rather than termination:
>
> > In all cases where a person is receiving alimony *in futuro* and the alimony recipient lives with a third person, a rebuttable presumption is raised that:
> >
> > (i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should **suspend** all or part of the alimony obligation of the former spouse; or
> >
> > (ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should **suspend** all or part of the alimony obligation of the former spouse.
>
> Tenn. Code Ann. 36-5-121(f)(2)(B)(emphasis added). By way of contrast, subsection (f)(3) contemplates automatic termination of an alimony obligation when the recipient dies or remarries. Tenn. Code Ann. § 36-5-121(f)(3). Further, we addressed this exact issue in a recent case, *Wiser v. Wiser*, No. M2013-02510-COA-R3-CV, 2015 WL 1955367 (Tenn. Ct. App. Apr. 30, 2015), *perm. app. denied* (Tenn. Sept. 17, 2015). In *Wiser*, we held that, under the cohabitation statute, the court's remedy is to "suspend all or part of the alimony obligation, not terminate the alimony.

-9-

The clear implication is that if the situation justifying the suspension ceases to exist, the alimony recipient may seek reinstatement of support from the former spouse." *Id*. at \*6 (quoting *Woodall v. Woodall*, No. M2003-02046-COA-R3-CV, 2004 WL 2345814 at \*5 (Tenn. Ct. App. Oct. 15, 2004) (emphasis in original; internal quotation marks and citation omitted).

*Gregory v. Gregory*, No. M2015-01781-COA-R3-CV, 2016 WL 3662182, at \*\*4-5 (Tenn. Ct. App. June 30, 2016), *no appl. perm. appeal filed*.

The evidence produced by Husband at trial indeed demonstrated that Wife's two adult children reside with her on her property. Wife argued that the issue was not properly before the court because it had not been pled. It was, however, tried and, when asked by Husband's counsel to rule on the issue of rebuttable presumption at the close of trial, the Trial Court merely stated that it did not find that the children gave Wife any money, only some services. The Trial Court did note that Wife paid $5,000 for the daughter's schooling.

The evidence presented to the Trial Court was undisputed that Wife's two adult children reside with her on her property. This implicates the rebuttable presumption contained in Tenn. Code Ann. § 36-5-121(f)(2)(B). The Trial Court found that the adult children did not provide any monetary aid to Wife. The Trial Court, however, did not address whether the services provided by her adult children to Wife contributed to her support or whether the adult children received support from Wife and, if so, whether Wife still showed a need for the alimony, as required by the statute. We therefore vacate this portion of the Trial Court's judgment and remand for the Trial Court to make a specific determination as to whether Wife overcomes the rebuttable presumption, and, if not, to suspend all or part of Husband's alimony obligation as the Trial Court finds appropriate. In its discretion, the Trial Court may conduct a new hearing at which additional proof may be presented as to this issue.

In summary, we affirm the Trial Court's finding of no material change in circumstances stemming from a downturn in Husband's financial portfolio. However, we vacate the Trial Court's decision regarding the rebuttable presumption for third party cohabitation under Tenn. Code Ann. § 36-5-121(f)(2)(B), and remand for the Trial Court to make a specific determination as to whether Wife overcomes the statutory rebuttable presumption that all or part of her alimony should be suspended.

## Conclusion

The judgment of the Trial Court is affirmed, in part, and, vacated, in part. This cause is remanded to the Trial Court for a determination on whether Wife overcomes the rebuttable presumption arising from Wife's adult children living on her property, if they are, and for collection of the costs below. The costs on appeal are assessed equally one-half against the Appellant, James S. Schrade, and his surety, if any, and, one-half against the Appellee, Cassandra Jean Ament Schrade.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

-11-