IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 6, 2020 Session

## REGINA D. GENSCI v. CYRUS W. WISER

**Appeal from the Circuit Court for Rutherford County**
**No. 50085     Larry B. Stanley, Judge**

_____

### No. M2019-00442-COA-R3-CV

_____

A husband filed a petition to retroactively reduce or terminate his alimony obligation, claiming he had no income during the relevant time period. The husband also sought to recover payment from his former wife for half of the remaining marital debt based on his interpretation of the final divorce decree. The trial court denied both requests. We conclude that the evidence does not preponderate against the trial court's finding that the husband's ability to pay remained unchanged. Based on the clear language of the final divorce decree and a subsequent agreed order, we also conclude that the wife was not responsible for the remaining debt. So we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., joined. RICHARD. H. DINKINS, J., not participating.

Heather G. Parker, Murfreesboro, Tennessee, for the appellant, Cyrus W. Wiser, Jr.

D. Scott Parsley[1] and Joshua G. Strickland, Nashville, Tennessee, for the appellee, Regina D. Smith.

---

[1] We granted Mr. Parsley leave to withdraw as counsel on October 21, 2020.

# OPINION

## I.

### A.

Regina D. Wiser ("Wife") and Cyrus W. Wiser, Jr. ("Husband") divorced in 2005 after a twenty-three-year marriage. Post-divorce financial disputes have brought them before us for a third time. *See Wiser v. Wiser*, 339 S.W.3d 1, 5 (Tenn. Ct. App. 2010) [hereinafter "*Wiser I*"] and *Wiser v. Wiser*, No. M2013-02510-COA-R3-CV, 2015 WL 1955367, at \*1 (Tenn. Ct. App. Apr. 30, 2015) [hereinafter "*Wiser II*"].

As we previously noted, "Husband is a self-employed engineer and businessman" and "[h]is business activities are conducted through various solely owned limited liability companies registered in Tennessee and Alabama." *Wiser I*, 339 S.W.3d at 5. The Wiser companies are single-member limited liability companies. Their success or failure has historically depended "to a large extent on Husband's personal efforts and his relationships with various government officials and business associates." *Id.* As sole owner, Husband "receives all of the profits and bears all of the losses" experienced by the companies. *Id.* Profits during the marriage "fluctuated greatly." *Id.* Still, at the time of the divorce, the trial court found the companies to be "overall profitable." *Id.* at 6.

In the division of the marital estate, Husband was awarded his interest in the Wiser companies "virtually *in toto*" along with most of the business assets. *Id.* Husband and Wife also owned four commercial buildings as tenants in common. The trial court awarded each spouse two of the buildings, but it delayed transfer of ownership until August 1, 2017. In the interim, Husband was ordered to continue paying the debt on the buildings, as well as, the cost of repairs and maintenance. And he was prohibited from "refinanc[ing] or further financially encumber[ing] the commercial buildings in any way" without Wife's agreement. The divorce decree also provided that, if a certain debt remained unpaid on August 1, 2017, Husband and Wife would share equal responsibility for the remaining balance of that debt.

The court found that Wife was the economically disadvantaged spouse. And it structured an alimony plan that would provide her with long-term support. The court ordered Husband to pay alimony in varying amounts until August 1, 2017, the date Wife would receive title to the two commercial buildings. After the ownership transfer, "the two commercial buildings would be Wife's primary source of income." *See id.* at 6-7.

A month later, the court issued an amended divorce decree. Among other things, the amended decree allowed Husband to seek more favorable financing terms for the debt on the commercial buildings as long as his efforts did not increase Wife's indebtedness.

2

B.

Two years later, Husband sent Wife several refinancing proposals. "Because she believed that Husband's . . . proposals would increase the total debt secured by the buildings, Wife refused to consent." *Id.* at 7. Husband filed a petition seeking to enforce and/or modify the amended divorce decree. Before the court could address the refinancing dispute, the parties reached an agreement. And on January 29, 2008, the trial court entered an agreed order incorporating the terms of their agreement. *See id.*

While Husband's petition was pending, Wife filed her own petition to modify alimony and child support. She argued that Husband's tax returns "show[ed] a clear trend of high income." *Id.* at 11. After a bench trial, the court ordered Husband to pay an increased amount of child support, but left the alimony award unchanged. *Id.* at 9-10. Wife appealed.

We reversed the court's alimony ruling and increased the alimony payment "to $10,000 per month, retroactive to [June 7, 2007,] the date on which Wife filed her [modification] petition." *Id.* at 18. And we ruled that the increased amount would "remain constant" until alimony terminated on August 1, 2017. *Id.*

A year later, Husband petitioned to reduce or terminate alimony based, at least in part, on a decrease in income.[2] *Wiser II*, 2015 WL 1955367, at *1. The trial court found that Wife's need remained substantially the same. *Id.* at *2. But "Husband's income had decreased during the period from April 14, 2011, until January 31, 2012." *Id.* So the court reduced his alimony for this specific period to $5,000 per month. *Id.*

This time Husband appealed. He argued that the trial court abused its discretion in failing to reduce his alimony payment for a longer period. *Id.* at *8. We concluded that the evidence did not "preponderate[] against the trial court's finding that Husband . . . failed to show a substantial and material change in circumstances to justify a modification of his alimony obligation for the period from February 1, 2012, through [August 1, 2017]. *Id.* at *9. We affirmed the trial court's decision in all respects. *Id.* at *11.

---

[2] Husband also sought to terminate alimony based on Wife's alleged cohabitation with her boyfriend. *Wiser II*, 2015 WL 1955367, at *1; *see* Tenn. Code Ann. § 36-5-121(f)(2)(B) (2017). We affirmed the trial court's finding that Husband failed to prove his cohabitation allegations. *Wiser II*, 2015 WL 1955367, at *6.

3

C.

While the second appeal was pending, Husband filed another petition to reduce or terminate alimony. Before trial, he notified the court that he was also seeking reimbursement for half the remaining debt on the commercial buildings as of August 1, 2017. Wife opposed both requests and sought additional attorney's fees.

Husband's new modification petition, filed November 6, 2014, alleged that he had no income. For various reasons, trial was delayed until September 20, 2018. By this time, the alimony award had terminated on its own terms. So Husband asked for retroactive relief. In effect, Husband wanted a credit for $550,000, the amount of alimony he paid between January 1, 2013, and July 31, 2017. He planned to use the credit to offset his other obligations to Wife.[3]

Trial focused primarily on Husband's ability to pay. Wife's claim that her need remained unchanged was not seriously challenged. Husband acknowledged that he paid Wife $10,000 a month in alimony between January 1, 2013, and July 31, 2017. But he claimed that he had to borrow the funds.

Husband maintained that he had no income during the relevant time period. As proof, he submitted copies of his joint federal tax returns for tax years 2013 to 2016 showing significant business losses.[4] Husband expected the 2017 tax return to be substantially the same. He explained that the modest income reflected on the returns represented his current wife's employment earnings. And the rental income from the commercial buildings was "simply a passthrough." Rent was paid directly to the lender.

He described himself as basically insolvent. All his assets were fully leveraged. His current wife paid his living expenses. And he had been forced to borrow from friends and family to meet his financial obligations. In addition to his lack of income, Husband revealed that he had been diagnosed with cancer in the spring of 2016. The cancer treatments exhausted him and made it difficult to concentrate. He had no plans to retire. But he had delegated the day-to-day operations of his companies to others.

According to Husband, he had also curtailed his spending habits. He denied having a lavish lifestyle. His health precluded travel. And he was forced to sell his private plane to satisfy creditors.

---

[3] Multiple awards of attorney's fees remained unpaid, and Husband had made only small payments on the judgment for retroactive alimony from the first appeal.

[4] Line 12 of Husband's joint federal tax returns showed business losses of $1,747,822 in 2013, $1,724,270 in 2014, $4,386 in 2015, and $494,992 in 2016. For tax years 2015 and 2016, Husband applied a net operating loss carryover from previous tax years.

Intense cross-examination cast doubt on Husband's narrative. Husband was confronted with multiple entries in a consolidated company ledger labeled as capital contributions. He denied making the contributions from his own resources, explaining he was "just a conduit." He had borrowed from friends, family, and other investors and funneled the proceeds into the companies. He also discounted the multiple cash withdrawal entries. He explained, just "[b]ecause there is—there is an entry on this form doesn't mean that I got cash out." He surmised,

> These companies float money back and forth, too. I don't know. You're asking something that's just an entry here. I can't tell you anything other than the way it's entered. But there is going to be money floating—it doesn't float, but one company may give money, or it may be their money, but you can't tell this without real detailed accounting. So I have no idea. I have no idea as to what these entries are.

Husband maintained that his current wife loaned him 1.7 million dollars to keep the Wiser companies afloat. He admitted that he had no official documentation of this transaction. And he was unable to explain where his wife, a claims manager at an insurance company, obtained these funds other than a vague reference to her "resources" from a prior marriage. According to Husband, his current wife's "resources" also paid for their home renovations in 2014, the cruise the couple enjoyed in 2016, and their sizeable charitable donations.

He admitted that the Wiser companies paid his current wife a monthly amount equal to the mortgage payment on his house and his alimony payment. Husband justified these transactions as loan repayments. He initially claimed to have no control over the transfers, noting that his assistant wrote the checks. And the funds were deposited into his wife's checking account. Husband did not maintain a checking account in his own name. But he agreed that he was authorized to write checks on his wife's account. And he was forced to admit,

> I will go and say we—there needs to be a draw made—not a draw, but there needs to be—we need to make a payment on the house, and I will have input to let it be known that that needs to happen. If there is anything else, I don't say the amount or designate the amount.
>
>     . . . .
>
> It's not routine, but I do have discussions to say we need—she needs a draw against her debt. That needs to be paid. So there is discussion, but it's not routine.

5

Husband eventually acknowledged that his alimony obligation, his attorney's fees, the mortgage on his home, and his life insurance premiums were paid from Wiser company funds during the relevant time period. In his view, none of these payments were income. In his words,

> I don't understand your question, financial benefit. I think—I thought we were here to talk about my income. I get financial benefit, even if I am borrowing money, but I don't—I derive no income. I have not derived a financial benefit from income in that timeframe.

When asked how the companies could afford to make these payments when they were losing money, Husband responded,

> [I]f you have cash, you choose what to pay. It doesn't mean that you have made money at the end of the year. You can have cash. There was not zero cash.

After hearing all the evidence, the trial court declined to modify the alimony award. The court found that Husband's ability to pay and Wife's need remained unchanged during the relevant period. And it ruled that Wife had no responsibility for the outstanding debt. In a subsequent order, the court awarded Wife $48,708.75 in attorney's fees.

## II.

Husband argues that the trial court erred in denying his modification petition and determining that Wife was not responsible for the remaining marital debt. He also questions the amount of the attorney's fee award. For her part, Wife requests an award of attorney's fees incurred on appeal.

Our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). We give great deference to the trial court's credibility assessments. *See Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009). We do not disturb "factual findings based on witness credibility unless clear and convincing evidence supports a different finding." *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009). We review questions of law de novo, with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

### A.

We will not alter the trial court's modification decision unless the court abused its discretion. *See Wiser I*, 339 S.W.3d at 11. So our review is limited. *Beard v. Bd. of Prof'l*

6

*Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009). We do not "second-guess the court below" or "substitute [our] discretion for the lower court's." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Nonetheless, a lower court's discretionary decisions do not escape appellate scrutiny. *Id.* In reviewing discretionary decisions, we consider "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.*

An award of alimony *in futuro* "remain[s] in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A) (2017). The party seeking modification bears the burden of proving both that a substantial and material change has occurred and that modification is warranted. *Bogan v. Bogan*, 60 S.W.3d 721, 729-30 (Tenn. 2001); *Freeman v. Freeman*, 147 S.W.3d 234, 239 (Tenn. Ct. App. 2003).

Husband argues that the trial court's decision was based on a clearly erroneous assessment of the evidence. Relying on his tax returns and his own testimony, Husband contends that the evidence preponderates against the trial court's finding that he had the ability to pay the alimony award.

The trial court rejected Husband's tax returns as reliable proof of his income. We accord that finding great weight. *See Williams v. City of Burns*, 465 S.W.3d 96, 120 (Tenn. 2015). Tax returns are not definitive proof of income. *Karpovich v. Brannick*, No. W2017-01796-COA-R3-JV, 2019 WL 126879, at *5 (Tenn. Ct. App. Jan. 8, 2019); *see also Wiser I*, 339 S.W.3d at 13-14 (noting that legitimate business expenses may still be considered as income for alimony purposes); *Pruett v. Pruett*, No. E2007-00349-COA-R3-CV, 2008 WL 182236, at *8 (Tenn. Ct. App. Jan. 22, 2008) (same). And the trial court is "not required to accept a . . . tax return at face value." *Karpovich*, 2019 WL 126879, at *5. The court is free "to disbelieve a [party]'s proof relative to his or her finances and deem it unreliable." *In re Samuel P.*, No. W2016-01665-COA-R3-JV, 2018 WL 1046784, at *14 (Tenn. Ct. App. Feb. 23, 2018). After all, income tax returns "may not truly reflect [a party's] ability to provide support." *Id.* This is particularly true when a party is in a position to manipulate income, such as the sole owner of a business. *See Taylor v. Fezell*, 158 S.W.3d 352, 358 (Tenn. 2005).

Even so, Husband contends that it is undeniable that his companies' revenues shrank in the 2013-2017 period. This may be true. But while Husband may have shown a material change, he did not prove that this change was substantial.[5] A change in circumstances is

---

[5] To be material, the change must have occurred since the entry of the last alimony order. *Malkin v. Malkin*, 613 S.W.3d 122, 140-41 (Tenn. Ct. App. 2019); *see also Bogan*, 60 S.W.3d at 728. And it must

7

substantial if "it significantly affects either the obligor's ability to pay or the obligee's need for support." *Bogan*, 60 S.W.3d at 728. Despite falling revenues, Husband continued to pay his personal expenses, including his alimony, with company funds. Husband's "intermingling" of personal and business finances makes "it close to impossible to determine Husband's true financial position." *Wiser II*, 2015 WL 1955367, at *9. Proof at trial showed that "Husband [still] controls the cash flow of his business." *See Wiser I*, 339 S.W.3d at 14. Whether he called it a draw or repayment of a debt, company funds were available to him. Multiple entries in his company ledger evidenced transfers of funds to and from personal and business accounts. Husband's attempts to explain otherwise were unconvincing.

Contrary to Husband's protestations, the trial court was not required to view his ability to pay "in a vacuum." *See Proctor v. Proctor*, No. M2006-01396-COA-R3-CV, 2007 WL 2471504, at *5 (Tenn. Ct. App. Aug. 31, 2007). Ability to pay alimony "can be impacted by a variety of factors," including the financial contributions of others. *Id.* His companies paid a wide variety of his obligations. Husband's current wife paid others. Both of these facts are relevant to the consideration of his ability to pay alimony. *See id.*

We conclude that the evidence does not preponderate against the trial court's finding that Husband's ability to pay remained unchanged. Because Husband failed to establish a substantial and material change of circumstances, we affirm the court's denial of his modification petition.

B.

Husband also challenges the trial court's ruling that Wife bore no responsibility for the remaining debt on the commercial buildings. He contends that paragraph 12 of the final divorce decree made Wife equally responsible for any remaining debt. And he insists that the agreed order after the refinancing was not intended to modify the original allocation of debt.

Interpretation of court orders presents a question of law, which we review de novo. *See Lamar Advert. Co. v. By-Pass Partners*, 313 S.W.3d 779, 785 (Tenn. Ct. App. 2009); *Pruitt v. Pruitt*, 293 S.W.3d 537, 544 (Tenn. Ct. App. 2008). We construe the language in a court order "in light of its usual, natural, and ordinary meaning." *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 359 (Tenn. 2008). "If the language . . . is clear, then the literal meaning . . . controls." *Id.*

At the time of the divorce, the four commercial buildings served as collateral for two loans, both payable to AmSouth Bank. The final divorce decree differentiated between

---

have been unforeseeable at the time of the previous decree. *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992).

these two debts primarily by account number. The court ordered Husband to continue to pay the debt owing on "Account #9811070663-232173, until and including the payment of August 1, 2017." The requirement that Husband pay the USDA guaranteed loan, "Account #9811254325-207126," had no termination date. Only the first debt was referenced in the paragraph of the final divorce decree cited by Husband, paragraph 12:

> It is ORDERED, ADJUDGED AND DECREED that in the event the debt owing to AmSouth, Account #9811070663-32173, is not paid off by August 1, 2017, and [Husband] has made all the payments owing thereon in a timely manner, then whatever balance is remaining on the debt owing to AmSouth, the parties shall be jointly liable for the remaining debt owing thereon, 50% to each.

Two years later, the parties returned to court, at an impasse on refinancing the debt. Husband concedes that they reached an agreement, the terms of which were incorporated into an agreed order. The bank agreed to "refinance the two loans . . . into three separate loans . . . such that the total of the indebtedness of loan #1, loan #2, and loan #3 equal[ed] the total of the indebtedness of the building loan and the wrap around loan."[6] As of August 1, 2017, loan #1 had been paid in full, but a substantial amount remained outstanding on the other loans.

With respect to Wife's liability for any of the debt after the refinancing, the agreed order provided, in relevant part,

> The parties are in agreement, and [Husband] represents, that [Wife] shall have no personal liability whatsoever on any of the three new loans; however, her real estate that was awarded to her by virtue of the Final Decree . . . shall continue as collateral for loan #1 only. Neither [Wife] nor her real estate shall have any responsibility for loan #2 and loan #3 which [Husband] and/or his business(s) is responsible for repaying.

We conclude that Husband is solely responsible for paying the remaining debt. The language of the divorce decree and the agreed order are abundantly clear. Per the divorce decree, Wife bore no responsibility for payment of any debt unless "the debt owing to AmSouth, Account #9811070663-32173, [wa]s not paid off by August 1, 2017." That debt was paid in full as part of the refinancing arrangement in 2008. And even if we agreed with Husband that the debt survived refinancing, he agreed that "[n]either [Wife] nor her real estate shall have any responsibility for loan #2 and loan #3 **which [Husband] and/or his business(s) is responsible for repaying**."

---

[6] The "wrap around loan" and the "USDA guaranteed loan" are one and the same.

Husband complains that "it defies logic" that he would release Wife from liability on the remaining debt. We disagree. Husband was precluded from refinancing the debt on the commercial buildings without Wife's consent. To obtain that consent, Husband agreed to be solely responsible for repaying the outstanding debt. Mutual promises are adequate consideration to support a contract. *Bill Walker & Assocs., Inc. v. Parrish*, 770 S.W.2d 764, 771 (Tenn. Ct. App. 1989).

We are also unpersuaded by Husband's argument that the agreed order was an unenforceable modification of the property division in the final decree. *See Towner v. Towner*, 858 S.W.2d 888, 892 (Tenn. 1993). The divorce decree, as amended, plainly contemplated that the parties could agree to refinance the debt. And they did. The agreed order merely incorporated the terms of the parties' refinancing agreement. *See Hannahan v. Hannahan*, 247 S.W.3d 625, 628 (Tenn. Ct. App. 2007).

C.

Finally, Husband asserts that the amount of attorney's fees awarded to Wife was unreasonable and included amounts unrelated to the alimony dispute. We review a trial court's award of attorney's fees only for an abuse of discretion. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). A reasonable fee is "a subjective judgment based on evidence and the experience of the trier of facts." *United Med. Corp. of Tenn., Inc. v. Hohenwald Bank & Tr. Co.*, 703 S.W.2d 133, 137 (Tenn. 1986). In determining a reasonable fee, trial courts consider a number of factors. *See Lexon Ins. Co. v. Windhaven Shores, Inc.*, 601 S.W.3d 332, 342 (Tenn. Ct. App. 2019); TENN. SUP. CT. R. 8, RPC 1.5. But "ultimately the reasonableness of the fee must depend upon the particular circumstances of the individual case." *Wright ex rel. Wright*, 337 S.W.3d at 177 (quoting *White v. McBride*, 937 S.W.2d 796, 800 (Tenn. 1996)).

We cannot say that the trial court's decision was an abuse of discretion. Husband had "a fair opportunity to cross-examine [Wife's] witnesses" and to present his own proof. *See Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992). And his efforts were somewhat successful. Wife's attorney initially requested $51,514 in attorney's fees and $2,916.27 in discretionary costs. After a reasonableness hearing, Wife's attorney reduced the amount of fees requested to $49,068.75. The trial court further reduced the requested amounts, awarding $48,708.75 in fees and $2,306 in discretionary costs.

Although Husband argues additional deductions were appropriate, the amount of attorney's fees awarded was reasonable and related to the petition to reduce or terminate alimony. The court's failure to list in its order the factors that guided its decision, standing alone, does not merit reversal. The court was intimately familiar with the time and effort expended by Wife's attorneys, having presided over this litigation for over four years. "[T]he record must contain some evidence showing that an award of attorneys' fees is

10

unreasonable . . . before a reversal of that fee is warranted." *Kline v. Eyrich*, 69 S.W.3d 197, 210 (Tenn. 2002). That standard has not been met here.

Wife requests an award of attorney's fees incurred on appeal. We have the discretion to award the requested fees. *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008); *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). In making our decision, we consider the following factors: (1) the requesting party's ability to pay the accrued fees; (2) the requesting party's success in the appeal; (3) whether the requesting party sought the appeal in good faith; and (4) any other relevant equitable factors. *Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007). In light of these factors, we grant Wife's request.

## III.

The trial court did not abuse its discretion in refusing to modify the alimony award or in its award of attorney's fees. Based on the clear language of the court's orders, we conclude that Wife was not responsible for the remaining debt on the commercial buildings. So we affirm the trial court's decision in all respects. We remand this case for a determination of a reasonable amount of attorney's fees incurred on appeal and for any further proceedings, consistent with this decision, that may be necessary.

_____

W. NEAL MᶜBRAYER, JUDGE